ALEXANDER STEPHENS, Petitioner.

The *St.* of 1855, *c.* 28, restricting the courts of this commonwealth and their clerks from receiving applications or entertaining jurisdiction for the naturalization of aliens, under the acts of congress, is not contrary to the Constitution of the United States.

PETITION of an alien, who had made his primary declaration of intention to become a citizen of the United States, and was otherwise qualified as was required by the acts of congress, to be admitted to make his final declaration on oath before this court. The question was whether the court would entertain the application since the passage of the *St.* of 1855, *c.* 28, which is copied in the margin.*

*B. F. Butler*, for the petitioner. By the Constitution of the United States congress has the power to establish a uniform rule of naturalization. Art. 1, § 8, *cl.* 4. And this power is exclusively in congress, *Chirac* v. *Chirac*, 2 Wheat. 269; and has been exercised by several acts now in force. Sts. of U. S. of 1802, *c.* 28, and 1804, *c.* 47, 2 U. S. Sts. at Large, 153, 292; 1816, *c.* 32, 3 U. S. Sts. at Large, 258; 1824, *c.* 186, 4 U. S. Sts. at Large, 69. Those acts prescribe a uniform rule,

---

* An act restricting the several courts established by the laws of this commonwealth from exercising jurisdiction in cases of naturalization.

SECT. 1. It shall not be lawful for any court established by the laws of this commonwealth, or for any clerk thereof, to receive or entertain any primary or final declaration or application, made by or on behalf of any alien, to become a citizen of the United States, or to receive any registry of an alien, or to entertain jurisdiction for the naturalization of aliens.

SECT. 2. Any clerk or other person who shall record or file any such application or declaration, or undertake to issue a certificate of naturalization to any person so hereafter applying, shall be liable to a fine of ten dollars and costs of prosecution, to be recovered by complaint before any justice of the peace or police court in the county where the offence is committed.

SECT. 3. This act shall take effect from and after its passage. [February 27th 1855.]

By *St.* 1856, *c.* 47, the supreme judicial court, the court of common pleas, and the superior court for the county of Suffolk, are authorized to entertain applications for naturalization.

so far as is involved in this petition, that if an alien, under the conditions described therein, shall make declaration upon oath before this court, such proceedings shall be recorded by the clerk, and the petitioner thereupon becomes a citizen, without further order of the court. *Campbell* v. *Gordon*, 6 Cranch, 176.

The *St.* of 1855, *c.* 28, has no binding effect. The authority of this court in the premises is derived from a law of the United States. *Gladhill, petitioner*, 8 Met. 170. If so, the right of the petitioner, as an inhabitant of the United States, to apply to this court, cannot be taken away by the State. *United States* v. *Peters*, 5 Cranch, 115. *Campbell* v. *Gordon*, 6 Cranch, 176. *United States* v. *Cornell*, 2 Mason, 60. The legislature have no more power to restrain, than to prohibit, the exercise of this power. It is like state laws taking away all remedy on contracts in the courts of the State, which have always been held unconstitutional, although there might be a remedy in the courts of the United States. *Jones* v. *Crittenden*, 1 Car. Law Repos. 385. *Bumgardner* v. *Circuit Court*, 4 Missouri, 50. *James* v. *Stull*, 9 Barb. 482. The power of congress over naturalization is given in the same clause of the constitution as the power to establish " uniform laws on the subject of bankruptcies," which have ever been held beyond the reach of the state legislatures. *Ogden* v. *Saunders*, 12 Wheat. 213, 277. *Golden* v. *Prince*, 3 Wash. C. C. 313.

Even if congress can confer no jurisdiction on a state court, this authority is *sui generis*, more like the verification of a fact than an exercise of jurisdiction, *ex parte* in its nature, and requiring no adjudication of court, or remedial process to carry the action of the court into effect. *Campbell* v. *Gordon*, 6 Cranch, 176. Whether an exercise of jurisdiction or not, it is too late to question it, having been conferred by the framers of the Constitution themselves, and acted on by the courts and people of all the states ever since.

The *St.* of 1855 is also an attempt to interfere with the judicial action of the courts, by special penalty, in contravention of the Declaration of Rights, instead of dealing with the subject matter by a general law, leaving the court to determine its own

jurisdiction according to its discretion in view of the laws of the State and of congress. *Picquet, appellant,* 5 Pick. 70. *Holden* v. *James,* 11 Mass. 402. *Merrill* v. *Sherburne,* 1 N. H. 199. *Durham* v. *Lewiston,* 4 Greenl. 140. *Bates* v. *Kimball,* 2 Chip. 77. *Dupy* v. *Wickwise,* 1 Chip. 237. *Governor* v. *Porter,* 5 Humph. 155. *State* v. *Fleming,* 7 Humph. 152. *Tully, ex parte,* 4 Ark. (Pike) 220.

SHAW, C. J. We suppose it to be a position uncontested, that, by the Constitution of the United States, power is vested exclusively in the general government, to grant letters of naturalization to foreigners, and that a similar power, formerly exercised by the respective state governments, has been superseded. *Chirac* v. *Chirac,* 2 Wheat. 269. If the state government, its courts or magistrates, have any authority on the subject, it must be derived from the general government.

The theory of the general government is, that a few great and leading subjects of control and administration belonging to and inherent in all sovereign states, and which are of common interest to all the states, are singled out and placed within the exclusive jurisdiction of the general government. And this government, unlike the confederation of states, which acted mainly through the state governments, is constituted with its legislative, judicial and executive departments, to act directly upon the people, without the intervention of the state governments, and is organized in such manner as to make, administer and execute all laws necessary or incidental to the full and complete exercise of the sovereign power upon the subjects placed within its administration. The general government has therefore full authority to appoint and commission all courts, magistrates and officers, to carry the laws of congress into effect, without necessary reliance on those of the states.

But we think that in the earlier stages of the general government, before the line which defines the distinction between the jurisdiction of the United States and that of the several States had become as distinctly marked as it has since been, it was not unusual for congress, as matter of convenience perhaps, and not regarding this distinction very strictly, to vest certain powers,

in the courts and magistrates of the several states, not of their own constitution and appointment. We believe that justices of peace of the states were authorized to issue warrants and arrest deserting seamen, and in many other cases state courts and magistrates had powers conferred by act of congress.

But we are of opinion that the powers which the legislature, by the statute in question, have prohibited the courts and magistrates of the State from exercising, do not extend to any cases, where duties are required by the Constitution of the United States, or by any laws of congress made pursuant to the constitution. The power of naturalization being vested exclusively in the government of the United States, congress have very properly provided for its exercise by the courts of the United States; and the superadded power by the act, giving the same jurisdiction to the courts of the State, is not necessary to the just rights of those entitled by law to the privilege of becoming citizens. These powers given to state courts are therefore naked powers, which impose no legal obligation on courts to assume and exercise them, and such exercise is not within their official duty, or their oath to support the constitution of the United States.

But whatever may be the authority of congress, to require the performance of duties by state courts, magistrates and officers, not affecting the organization of the national government, or not expressly provided for by the Constitution, (respecting which there may be some doubt,) it is well established that such courts and magistrates may, if they choose, exercise the powers thus conferred by congress, unless prohibited by state legislation. *Prigg* v. *Pennsylvania*, 16 Pet. 622.

The decision of this principle accounts for the fact, that this jurisdiction on the subject of naturalization was so long exercised by the courts of the Commonwealth, and that such jurisdiction was strictly legal. But according to our view of the Constitution of the United States and the laws of congress made pursuant to it, expounded in reference to the powers reserved to the states, since the government of this commonwealth has declared that the courts and magistrates appointed

by it shall not exercise jurisdiction over the subject of naturalization, it is not competent for this court to grant the present petition.

We must carefully distinguish this from a class of cases where, under the authority vested in the general government, and by laws passed by congress, within the scope of their authority, duties are imposed on the state government, or on the governor, judges, magistrates or officers of the State. These, by force of the Constitution of the United States, become the supreme law of the land, and therefore cannot be affected by any state legislation. On the contrary, all state officers, being sworn to support the Constitution of the United States, would be bound to act in conformity with the laws of the United States thus rightfully made, if, unhappily, any conflict should arise between the laws of the United States and those of the Commonwealth.                *Petition dismissed.*