Nott, J.,
delivered the opinion of the court:
This is an action brought to recover back $3,062 illegally exacted as duties upon goods carried into the city of Memphis during the late war. The case comes before us upon demurrer.
It appears from the petition that the claimants, for the purpose of carrying on their business in Memphis, and to siipply the loyal citizens of that city during the years 1863, ’64 and ’65, “did import into said city from the neighboring States, divers quantities of such supplies, the said city then being within the military lines of the Federal troops, although the said State was declared to be in a state of insurrection.” To this end the claimants obtained permits under various acts of Congress and shipped their goods “through the custom-house in the city of St. Louis.” It is next charged that the claimants “ paid to the officers of said custom-house- the fees for the permits and affidavits as required by the rules and regulations of the Secretary of the Treasury,” but that “in addition thereto they exacted from him, by and under the authority of the Secretary of the Treasury, ail valorem duties upon all of such goods and supplies.” It does not appear that the claimants made any written or other protest against the payment of these “duties;” *368 but it is alleged that “they were compelled to and did pay said so-called duties in order to procure the shipment of such goods from St. Louis aforesaid.
Before proceeding to the merits of the case, some doubts are felt as to the jurisdiction. The case is brought as a revenue case, being to recover back ad valorem duties upon “goods f and the argument of the claimant’s counsel, moreover, goes upon the assumption that “the Secretary of the Treasury had not the power under the Constitution to' establish a tariff of duties upon goods shipped from one port of the United States to another port of the United States. The recent intimation of the Supreme Court in NicholVs Case, (post,) that Congress in creating the Court of Claims did not “intend to confer on it the power to hear and determine cases arising under the revenue laws, accompanied by the express decision that this court has not jurisdiction of an action to recover back an excess of duties paid on certain importations, occasions an inquiry as to our power to hear and determine an action brought to recover back moneys exacted and paid “ as duties.”
Perhaps a sufficient answer to these doubts may be found in the fact that this action, though brought to recover back moneys paid into the custom-house as duties, is not truly a revenue ease; for the reason that the moneys exacted as duties were not exacted by virtue nor under the color of any revenue law. So thinking, we have decided to retain jurisdiction and pass upon the merits.
The statute upon which the case rests is the 5th section of Act 13th July, 1861,.(12 Stat., L., p. 255.) That statute is indeed entitled "An act further to provide for the eollection of duties on imports and, for other purposes,” but the 5th section relates exclusively to “commercial intercourse" with the insurrectionary States. Neither is the statute extended to the collection of duties on exports, nor intended to establish any new revenue not already established by law.
This 5th section in the first place makes it lawful for the President under certain circumstances “ by proclamation to declare that the inhabitants of such State, or any section or part thereof where such insurrection exists, are in a state of insurrection against the United States." It then declares that “ all commercial intercourse by and between the same and the citizens thereof and the citizens of the rest of the United States shall *369 cease and be unlawful.” It next provides that “all goods and chattels, wares and merchandise coming from” “and all proceeding to such State or section, by land or by water,” “ be forfeited to the United States.” But to the section is then appended a proviso which declares that “the President may in his discretion license and permit commercial intercourse with any such part of said State,” “ and such intercourse, so far as by him licensed, shall be conducted and carried on only in pursuance of rules and regulations prescribed by the Secretary of the Treasury.” The proviso further authorizes the Secretary of the Treasury to “ appoint such officers, at places where officers of the customs are* not now authorized by law, as may be needed to carry into effect such licenses, rules, and regulations.”
The first regulations prescribed by the Secretary of the Treasury under this act are those of August 28,1862, whereof the ninth is as follows:
“In order to defray the expenses under these regulations, a fee of twenty cents will he charged for each permit granted; and shipments permitted to and from States heretofore declared to be in insurrection shall, in addition thereto, be charged with the following fees, viz: five cents on each one hundred over three hundred dollars on all shipments to such States or sections; fifty cents on each one thousand pounds of cotton, and twenty-five cents on each one thousand pounds of sugar permitted from such State.”
This regulation was materially altered in those of 31st March, 1863, where regulation IX provides that “a fee of twenty cents will be charged for each permit granted for purposes of trade under these regulations; and in addition thereto the following fees shall be collected, viz: for a permit to transport any other goods and chattels, wares, and merchandise designed for sale * * * five per centum upon the sioorn invoice vahie thereof at the place of shipment.” There are subsequent regulations of the Secretary and subsequent acts of Congress relating to the subject, but these sufficiently present the jmint of law under consideration.
The argument which has been addressed to us against these regulations of the Secretary, denies that any such power is given by the statute “ for the reason that any such power would have been repugnant to the Constitution of the United States.” The' argument is predicated upon a state of peace, and is much too broad.
*370 The Constitution (Art. I, § 9, subd. 5) declares, “No tax or duty shall be laid on articles exported from any State. No preference shall be given by any regulations of commerce or revenue to the ports of one State over those of another; nor shall vessels bound to or from one State be obliged to enter, clear, or pay duties in another.”
These provisions, as applied to the traffic of citizens between different States in a time of peace, would overthrow nearly every provision of the statute. The power and the duty of Congress to prohibit or regulate commercial intercourse with States or districts in actual insurrection is a power and a duty, we believe, which have never been questioned; and the power to prohibit commercial intercourse necessarily carries with it the lesser power to regulate.
Assuming as beyond argument that the exercise of this power by Congress was, under the circumstances, both constitutional and right, we find that the statute has committed to the Secretary of the Treasury an absolute discretion to prescribe the “ rules and regulations” “ only in pursuance” of which this commercial intercourse could be carried on. In the exercise of that discretion the Secretary prescribed that'there should be charged certain trivial fees, and also a percentage' on the value of “ all shipments.” These charges, however, were not imposed by the Secretary by way of revenue, but, as the regulation quoted expressly declares, “in order to defray the expenses under these regulations.”
It must be conceded, we think, that if the Secretary possessed the power which he here essayed to exercise, the power “ to defray the expenses under these regulations,” then no court can set its discretion against his, by overruling either the manner, or the amount of the charges which he prescribed. Therefore the question is narrowed simply to the power of the Secretary under the act “ to defray the expenses.” If he possessed that power we cannot say that the manner of exercising it by a percentage was illegal, nor that the rate prescribed was excessive.
The question might be one of unusual interest, requiring an extended examination of other statutes, but in the present case we think the power exercised has received an implied legislative ratification. The act, it is to be noted, authorized certain new and additional officers, but made no provision whatever for the increased expenses which it caused. All of the details of *371 tbe act seemed, to have been committed to tbe discretion of the Secretary, and this detail of providing for tbe expenses among tbe others. After tbe Secretary, in tbe exercise of this discretion, bad provided for defraying tbe expenses of tbe traffic, Congress legislated upon tbe same subject, yet made no alteration in tbe system thus established, but on tbe contrary, by tbe “Act, in addition to the several acts concerning commercial intercourse betioeen loyal and insurrectionary States,” 2d July, 1864, (13 Stat. L., p. 375,) gave to tbe system tbe sanction of positive law, in expressly providing that “ the Secretary of tbe Treasury, with tbe approval of tbe President, shall make such rules and regulations as are necessary to secure tbe proper and economical execution of tbe provisions of this act, and shall defray all expenses of such execution from the proceeds of fees imposed by said rules and regulations,” and from other sources indicated in tbe statute.
. But there is still another ground for sustaining tbe demurrer, which is, that the payment of these so called duties, sought to be here recovered back, was entirely voluntary. In tbe case of Sehlesinger, (1 C. Ols. B., p. 16,) this court expressly held that payment to a public officer without objection, in mistake of law, was voluntary, although be held the claimants goods in his possession. And in tbe case of Nicholl, already cited, (see post,) tbe Supreme Court says, on tbe same facts, that such duties “ toerepaid voluntarily.” Inthecasenowbef'oreus,thefacts bear much more strongly against tbe claimants. Their goods bad not been imported before tbe duties were imposed, and they in no sense paid to procure their release, but on tbe contrary, paid, as their petition alleges, “ at tbe time of such shipment,” and when they procured tbe permits that authorized their traffic. Tbe claimants were under no obligations to make the shipments ; tbe charges mot them at tbe very outset of their adventure ; and it was therefore a voluntary traffic on their part as well as a voluntary payment. They made no objection to tbe charges imposed; they filed no protest; they took no appeal; they received the benefit which they sought. It is clearly against tbe policy of tbe law as between private persons, and still more as between a government and its citizens, to allow transactions performed and closed', and wellnigh outlawed to be opened and litigated for no better reason than that tbe agents *372 of tiie one party with, tbe assent of the other, and under a mistake of law, charged more than the law might warrant them in doing.
The petition must be dismissed.