# THE PEOPLE OF THE STATE OF CALIFORNIA *v.* I. W. RAYMOND.

" COMMERCE " INCLUDES THE TRANSPORTATION OF PASSENGERS.—The term " Commerce," as employed in section eight, Article I of the Constitution of the United States, is not limited to an exchange of commodities only, but includes, as well, "intercourse" with foreign nations, and between the States; and the term "intercourse" includes the transportation of passengers.

IDEM.—When the Congress, in the exercise of its constitutional right, has by its legislation established regulations of commerce with foreign nations, and among the several States, its authority is paramount and exclusive, and its enactments supersede all State legislation on those subjects. Whether the States could constitutionally exercise this power in the absence of congressional legislation, not decided.

IDEM.—In the case where the State has not the constitutional power, by means of direct legislation, to regulate the intercourse of its citizens with foreign nations, and with the other States, it cannot accomplish by indirect methods what it is forbidden to do directly.

IDEM—REGULATION OF COMMERCE WITH FOREIGN NATIONS, AND BETWEEN THE STATES, BY CONGRESS.—By the enactment of section two hundred and eighty-five of the United States Internal Revenue Act, (2 Brightley's Dig. 271,) the Act of August 30th, 1852, and the Act of March 6th, 1855, (10 U. S. Statutes at Large, 61, 715,) Congress has undertaken to regulate the entire business of transporting passengers by sea.

NATURE AND OBJECTS OF ACT OF LEGISLATURE PASSED MAY 14th, 1862, (Statutes 1862, p. 539).—The Act entitled "An Act to provide revenue for the support of the government of this State from a tax upon foreign and inland bills, passengers, insurance companies, and other matters," passed May 14th, 1862, has no reference to the execution of the inspection laws of this State, and is not in the nature of a police regulation, but is a measure designed for revenue purposes only.

IDEM—ACT UNCONSTITUTIONAL.—The stamps which, by the provisions of the Act, are required to be purchased from the State, are to be regarded in no other light than as a tax on the contract for passage, to be paid by the passenger. This is a regulation of commerce, within the meaning of section eight, Article I of the Federal Constitution, and the Act is unconstitutional and void.

APPEAL from the District Court, Fourth Judicial District, City and County of San Francisco.

The facts are stated in the opinion of the Court.

*Jo Hamilton, Attorney General,* for Appellant.

The conveying of passengers by the line of respondent's steamers *via* San Juan del Sur, Nicaragua, is not commerce with a foreign nation within the meaning of the Constitution

of the United States, nor is the Act regarding stamps, under which this suit is brought, repugnant to the provisions of the Federal Constitution giving to Congress the power of regulating commerce. (Acts of Legislature, 2 Hittell, Secs. 6,400, 6,418, 6,424; *Ex parte Crandall,* 1 Nev. 294–318.)

Commerce is the mutual intercourse between different nations or States for the purposes of trade and exchange of commodities, and applies to property, and not to persons. (*Brown* v. *State of Maryland,* 12 Wheat.; *New York* v. *Milne,* 11 Pet. 103.) All powers which are not absolutely vested in the General Government by the several States remain to those States. (*Livingston* v. *Van Ingen,* 9 Johns. 507; *Willson* v. *Bush Creek Marsh Co.,* 2 Pet. 245.)

The power to tax passengers has in no case been ceded to Congress, nor has the exercise of it been prohibited to the States.

The main strength of respondent's authorities lie in the *Passenger Cases,* 7 How. 283–572. This is a case where the States of New York and Massachusetts each levied a tax upon each foreign passenger before he landed within their territorial jurisdiction. This was held to be unconstitutional, barely by a majority of one, there being four dissenting opinions.

But there is a marked distinction between those cases and the one at bar. In those cases the passenger was compelled to pay a tax *before he landed or became a resident* of the State. In this case the tax is levied upon him before he *leaves* the State, while he is yet within its jurisdiction and subject to its laws. If, as Mr. Justice Grier admits, in those cases passengers may become subject to State laws when they become a portion of its population, then they must be subject to its laws when they are already actual citizens, and before they have relinquished their rights as such, as is the fact in this case. If this right is admitted in a case where the passenger in question has not arrived within the jurisdiction of the State, it cannot be denied in a case where the passenger is already within the jurisdiction of the State, and is about

to depart from it. The power of taxation exists in the State to the full extent to which it may be exercised by any sovereign nation, except in respect to exports, imports and tonnage, and such things as are held by the United States Government where its rights might be impaired if the property was taxed by the States. (*The People* v. *Naglee*, 1 Cal. 233–238; *McCulloch* v. *Maryland*, 4 Wheat. 316, 425; *Gibbons* v. *Ogden*, 9 Wheat. 1; *Providence Bank* v. *Billings*, 4 Pet. 561; *Brown* v. *Maryland*, 12 Wheat. 441; 2 Story on Const. 437; *License Cases*, 5 How. 588.) This Act may be considered as a License Act upon pursuing the business of selling tickets, and as requiring a license tax to be paid in proportion to the amount of business. (*Ex parte Crandall*, 1 Nev. 294.) The same rule applies to passengers. (*Norris* v. *City of Boston*, and *Smith* v. *Turner*, 7 How. 283.) Passengers are not "imports" or "exports," within the meaning of the Constitution. As to the restriction upon the power of a State in regard to the taxation of passengers, it was finally rested upon the implied prohibition resulting from the power given to Congress to regulate commerce, which power was determined to be *exclusive,* and the word "commerce" to include "navigation" and "intercourse." But it is only exclusive when Congress has legislated in regard to the particular subject. (*Steamship Co.* v. *Joliffe*, 2 Wallace, U. S.. 459, 469, 473; *New York* v. *Milne*, 11 Pet.; *Nathan* v. *Louisiana*, 8 How.; *People* v. *Coleman*, 4 Cal. 56.)

It may be admitted that a State tax on "passengers" going out of the country would be void; but as a person ceases to be a passenger when he lands, so he can only again become a passenger when he goes on board of a ship. The Act is, however, made to take effect before such event happens, and must be regarded as applying not to passengers, but to persons within the State's jurisdiction, for the purposes of State taxation.

*J. B. Manchester,* for Respondent.

Two questions are presented for the consideration of the Court in this case:

1st.—Is the power of Congress to regulate commerce an *exclusive* power?

2d.—Is the statute law of California, under which this action is brought, a regulation of commerce?

We answer both of the above interrogatories in the affirmative, and refer the Court to the following authorities to sustain our answer:   Constitution of United States, Article I, Secs. 8, 10;  U. S. Int. Rev. Laws, Sec. 285;  2 Brightly's Dig. 271;  2 Hittell, 938, par. 6,424, Sec. 1;  *New York* v. *Milne*, 11 Pet. 158;  *United States* v. *Coombs*, 12 Pet. 78;  *Holmes* v. *Jennison*, 14 Pet. 570;  *Groves* v. *Slaughter*, 15 Pet. 449; *Sturges* v. *Crowninshield*, 4 Wheat. 196;  *Houston* v. *Moore*, 5 Wheat. 23;  *Gibbons* v. *Ogden*, 9 Wheat. 1, 240;  *Brown* v. *State of Maryland*, 12 Wheat. 419;  *Thurlow* v. *Massachusetts*, 5 How. (U. S.) 612, 613;  *Smith* v. *Turner*, 7 How. (U. S.) 283–573;  *Williams* v. *Gibbes*, 17 How. (U. S.) 242;  *Hays* v. *Pacific Mail S. S. Co.*, 17 How. (U. S.) 598;  *Sinnot* v. *Davenport*, 22 How. (U. S.) 227;  *Foster* v. *Davenport*, 22 How. (U. S.) 245;  *Almy* v. *State of California*, 24 How. (U. S.) 169; Webster's Works, Vol. IV, 492, 495, 496;  Webster's Works, Vol. VI, 11, 12;  *Jack* v. *Martin*, 12 Wend. 317;  *People* v. *Downer*, 7 Cal. 169;  *Mitchell* v. *Steelman*, 8 Cal. 363;  *Brumagim* v. *Tillinghast*, 18 Cal. 265;  *Lin Sing* v. *Washburn*, 20 Cal. 534.

By the Court, CROCKETT, J. :

By an Act of the Legislature of this State, approved May 14th, 1862 (Statutes 1862, p. 539), it is made a highly penal offense for any agent, shipper, Captain, purser, or other person authorized to sell passenger tickets, or to make contracts for passage on vessels or steamers about to leave the port of San Francisco for any port without the limits of this State, to issue any such ticket, or make any such contract for passage, without first having procured and placed certain stamps,

to be issued by the State, on such ticket, or on the memorandum of the contract; or if the contract for passage be verbal, without having first paid to the Stamp Inspector the price of the stamps.

The defendant was the agent for the ship Moses Taylor, plying between the port of San Francisco and the port of San Juan del Sur, in the Republic of Nicaragua; and this action is brought to recover sundry large sums of money, alleged to be due from him, as penalties for repeated violations of the aforementioned provisions of the Act of May 14th, 1862.

The defendant demurred to the complaint on the ground that the said Act is in violation of the Constitution of the United States, and is, therefore void. The District Court sustained the demurrer on that ground; and entered final judgment for the defendant, from which judgment the People have appealed.

The clauses of the Constitution which are alleged to be violated, are sections eight and ten of Article I. The first of these sections enumerates, amongst the powers to be exercised by the Congress of the United States, the power " to regulate commerce with foreign nations, and among the several States, and with the Indian tribes." Section ten, amongst other things, provides that, " no State shall, without the consent of the Congress, lay any imposts or duties on imports or exports, except what may be absolutely necessary for executing its Inspection Laws."

It may be premised that the Act in question has no reference to the execution of the Inspection Laws of this State, and was not intended to be in the nature of a police regulation. On the contrary, it is obviously a measure designed for revenue purposes only. The title of this Act is: " An Act to provide revenue for the support of the Government of this State from a tax upon foreign and inland bills, passengers, insurance companies, and other matters." The Act contains no provisions from which it can be inferred that the Legislature intended it in any sense as a police regula-

tion, or for any other purpose than to raise revenue. We may, therefore, discard from our consideration any argument touching the constitutional power of the Legislature to enact police regulations or measures for executing its Inspection Laws. This Act is not included in either of these categories. The only question, therefore, for our decision is, whether or not, treating it purely as a Revenue Act, it violates either of the clauses of the Constitution above specified.

These clauses have so often been before the Courts, and have been so frequently discussed by eminent jurists, that, in arriving at a proper construction of them, our chief duty consists in ascertaining precisely what points are to be considered as definitely settled by a series of prior adjudications.

We do not propose to go into a critical analysis of these decisions, nor of the reasonings on which they are founded, but only to state the propositions which we understand them distinctly to enunciate.

After a careful examination of the numerous cases which have been adjudicated, touching these provisions of the Constitution, we consider the following propositions to be definitely settled on reason and authority:

1st. That the term " commerce," as employed in that clause of section eight, which is under discussion, is not to be construed as limited to an exchange of commodities only; but includes as well " intercourse " with foreign nations and between the several States; and the term " intercourse " includes the transportation of passengers.

2d. That whatever doubts may have existed as to the power of the several States to regulate commerce between their own citizens and foreign nations or with the citizens of other States, in the absence of legislation on that subject by the Congress of the United States, it has never been seriously questioned that when Congress, in the exercise of its constitutional right, does legislate on that particular subject, its authority is paramount and exclusive, and its enactments supersede all State legislation on that subject. Any other

63

rule than this would lead to perpetual conflicts between the State and Federal Governments, and would prove to be utterly impracticable.

3d. That if the State has not the constitutional power, by means of direct legislation, to regulate the intercourse of its citizens with foreign nations and with the other States, it cannot accomplish by indirect methods what it is forbidden to do directly.

These propositions are sustained by the following authorities: *Gibbons* v. *Ogden*, 9 Wheat. 1; *Passenger Cases*, 7 How. 283; *Holmes* v. *Jinneson*, 14 Pet. 540; *Sinnot* v. *Davenport*, 22 How. 227; *Foster* v. *Davenport*, 22 How. 245; *Hays* v. *Pacific Mail Steamship Company*, 17 How. 596; *Almy* v. *State of California*, 24 How. 169; *Brown* v. *Maryland*, 12 Wheat. 419; *People* v. *Downer*, 7 Cal. 169; *Mitchell* v. *Steelman*, 8 Cal. 363; *Brumagim* v. *Tillinghast*, 18 Cal. 265; *Lin Sing* v. *Washburn*, 20 Cal. 534.

It remains for us to apply these principles to the case at bar. The Act of the Legislature of May 14th, 1862, does not in terms forbid passengers to leave the port of San Francisco for a foreign port without having purchased a stamp ticket or having paid for stamps. No penalty is imposed on the passenger, and no duty is exacted of him in respect to the purchase of stamps. He may go with impunity, with an unstamped ticket or with no ticket at all. But before the passenger is allowed to sail, the agent, shipper, Captain, purser or other party to the passenger contract must purchase from the State stamps of the requisite value, under heavy pains and penalties. This can be regarded in no other light than as a tax on the contract for passage, and though the tax is nominally paid by the owner of the vessel, there can be no doubt that it is added to the price of passage and is practically paid by the passenger. Is this a regulation of commerce within the meaning of section eight, Article I of the Constitution?

We have no hesitation in holding that it is.

We consider *Brown* v. *The State of Maryland*, 12 Wheat.

419, and *Almy* v. *The State of California*, 24 How. 169, as decisive of the proposition that the stamp tax in this case is a tax on the contract of passage, and not a mere personal tax on the agent, shipper, Captain or owner of the vessel. The title of the Act declares it to be a tax on "passengers," and its provisions leave no room to doubt that it was intended to be a tax on the contract for passage.

In *Brown* v. *Maryland*, a license tax on the importer was held to be a tax on the goods imported; and in *Almy* v. *California*, a stamp tax on a bill of lading for bullion was decided to be a tax on the bullion. In this case it is quite as plain that the tax to be paid by the agent, shipper, Captain or owner, is only a tax on the contract for passage.

But conceding this, and that "intercourse" is a part of commerce, in the sense of the Constitution, does it follow that a tax on the contract for passage is a regulation of commerce?

We think it does. Its undeniable tendency is to restrain intercourse with foreign nations; and, as we have seen, "intercourse" is a part of commerce. It is no answer to this proposition to say that so small a tax can exert no appreciable influence in restraint of intercourse. The same argument was employed in *Brown* v. *Maryland;* and, in commenting upon it, Mr. Chief Justice Marshall said: "It is obvious that the same power which imposes a light duty can impose a very heavy one—one which amounts to prohibition. Questions of power do not depend on the degree to which it may be exercised. If it may be exercised at all, it must be exercised at the will of those in whose hands it is placed. If the tax may be levied in this form by a State, it may be levied to an extent which will defeat the revenue by imposts, so far as it is drawn from importations into the particular State."

This reasoning applies with full force to the case we are considering. If the State can impose a small tax on the contract for passage, it may increase it to a degree so onerous as to become absolutely prohibitory. We conclude,

therefore, that this tax is a regulation of commerce in the sense of the Constitution.

It is not necessary for us to decide whether or not the State could exercise such a power, in the absence of legislation on the same subject by Congress, inasmuch as we shall see that Congress has legislated on precisely the same subject.

By section two hundred and eighty-five of the United States Internal Revenue Act, (2 Brightley's Dig. 271,) "passage tickets, by any vessel from a port in the United States to a foreign port," are required to be stamped with internal revenue stamps, varying in amount according to the price of passage.

By the Act of August 30th, 1852, and the Act of March 3d, 1855, (10 Stats. at Large, 61, 715,) minute provisions are enacted for regulating the transportation of passengers by sea to and from the United States. By these, and perhaps other similar enactments, Congress has undertaken to regulate the business of transporting passengers by sea between the United States and foreign countries. It has directed certain precautions to be taken against fire on shipboard; has prescribed the number and character of the pumps and life boats, the number and quality of life preservers, the quantity and quality of the provisions, the number of passengers to be carried, and has prohibited gunpowder or explosive fluids to be transported on passenger steamers, except in packages of a certain character, marked and labeled in a particular manner.

These minute details evince the cautious and careful manner in which Congress has undertaken to regulate the entire business of transporting passengers by sea, as a branch of our foreign commerce. In the exercise of its constitutional right it has regulated that branch of our commerce with foreign nations which consists in the transportation of passengers by sea. It has done all which it deemed to be necessary or proper to place that branch of our commerce on a proper footing; and having done this, it is evident that no State, by its local regulations, can either add to or subtract

from the burdens which Congress has imposed upon the vessel or its owners or agents in respect to the business of transporting passengers. If the State can tax the owner for every passenger that sails on his ship, it may discriminate between classes of passengers and vary the amount, according to the age, sex, color or wealth of the passenger. By capricious or oppressive legislation it might greatly embarrass and perhaps entirely destroy the whole system established by Congress for the regulation of this important branch of our foreign commerce. The exercise of this power by the several States, if permitted, would be as various in its operations as the interests or local prejudices of each State might prompt; and instead of one great national system regulating this branch of our commerce, we might have a different system in every State from which a vessel sails to a foreign port. We need press the argument no further to show that such a system finds no warrant in the Federal Constitution.

We have omitted thus far to refer specially to what are known as *The Passenger Cases*, 7 How. 283, not because we consider them irrelevant to the questions discussed in this opinion, but on the contrary, because the Attorney General in his brief practically considers them to be decisive of this case, unless he has successfully maintained the proposition that there is a difference in principle and in legal effect between a tax imposed on passengers who are about to disembark on our shores but have not actually left the ship, and a tax on passengers who are about to embark from the United States for a foreign port.

His argument is that in one case the passenger has not come within the jurisdiction of our laws, and is not a portion of our population, and is therefore not subject to taxation; whilst in the other case the passenger, being already within our jurisdiction and a portion of our population, is subject to be taxed, as any property and all persons within our territorial limits are liable to be taxed.

We do not perceive the force of this distinction. Our proposition is that the tax on passengers, as such, is an

interference by the State with the paramount authority of Congress to regulate that branch of our foreign commerce which consists in the transportation of passengers by sea between our own ports and foreign ports; and it is therefore immaterial whether the tax is levied on passengers about to land on our shores or on those about to depart. In either case it is an invasion of the exclusive and paramount authority of Congress to regulate this branch of our foreign commerce, and comes fully within the principle decided in *The Passenger Cases.*

The tax is not levied upon the agent, shipper, owner or passenger, simply as a citizen within our jurisdiction, and therefore subject to taxation, in like manner as all persons or property within our jurisdiction are liable to be taxed; but is levied as a preliminary condition to the performance of an act which constitutes a material element in an important branch of our foreign commerce. In other words, it is a tax upon the act to be performed, to wit: upon the making of a contract for passage, and not a personal tax upon the party as a citizen who is subject to taxation. The State may tax at its discretion, subject only to the limitations of the State Constitution, all persons or property within its jurisdiction; but it cannot, under the form of a tax on the person, impose burdens, restrictions or limitations upon our foreign commerce which are inconsistent with the paramount authority of Congress over that subject.

Our conclusion is, that the Act of the Legislature under discussion violates the Constitution of the United States, and is therefore void.

Judgment affirmed.