## THE CITY OF DUBUQUE v. STOUT.

Corporation municipal: POLICE REGULATIONS: WHARFAGE. Where a city is authorized by its charter to establish and regulate the use of wharves, fix the rates of wharfage, and regulate the anchorage and moorings of boats and rafts, it possesses, and may, by ordinance, exercise the incidental power of prohibiting any and all persons, including those owning lots abutting on the stream navigated, from using any place other than the wharf as established by the city authorities without permission of the city and payment of the ordinary wharfage fee.

*Appeal from Dubuque-District Court.*

WEDNESDAY, JULY 26.

THE defendant was prosecuted before a justice of the peace for the violation of a city ordinance. The case was appealed to the district court, where the same was tried by the court on an agreed statement of facts as follows:

" It is agreed in this case:

1st. That defendant landed certain lumber on lot 8, within the corporate limits of Dubuque, at a place other than at the public wharf, without obtaining the consent of the wharf master, and without paying wharfage as required in the ordinance.

2d. That such lumber was so landed since the taking effect of the ordinance passed August 25, 1870.

3d. It is agreed that defendant is the owner in fee simple of said lot 8, and was such owner when the lumber was landed; that lot 8 abuts upon a slough, running in front of the city of Dubuque, between the main land and the main channel of the Mississippi river; that no wharf, or public landing, has ever been dedicated or set apart thereon; that all the lumber landed and piled by defendant was so done upon defendant's property: this

agreement is made and shall be binding only for the purposes of this case."

(Signed by the attorneys of the respective parties.)

The material part of the ordinance referred to in this agreement is as follows :

" Sec. 3. That the portion of the public landing on the Mississippi river, south of First street in said city, is hereby exclusively appropriated as a steamboat landing ; and all steamboats arriving at the city of Dubuque shall land at such landing and at no other place, and no raft or boat, excepting steamboats, shall land thereat, without the consent of the harbor master. That portion of the public landing on the Mississippi river, north of First street and up to the north line of Seventh street extended, be and is hereby appropriated as a landing for other boats, barges, and rafts, and no such boat, barge or raft shall land at any other landing or place within the limits of said city, without the written permission of the harbor master, first obtained for that purpose, which may be granted on payment of the wharfage which would have accrued to the city if such permit had not been granted ; and any person having charge or control of any boat, barge or raft, who shall violate any of the provisions of this section, any person owning such boat, barge or raft, who shall direct or consent to such violation, shall, on conviction thereof, be subject to a fine of one hundred dollars, or imprisonment in the city jail for thirty days, at the discretion of the court before which such person shall be convicted."

On the trial of the cause the court found for the defendant, and adjudged the costs against the city.

Plaintiff appeals.

*E. McCeney* for the appellant.

*Shiras, Van Duzee & Henderson,* and *Roberts & Fouke* for the appellee.

Vol. XXXII.— 11

MILLER, J. — The city charter of Dubuque provides as follows:

" Sec. 7. The city council shall have power, and it is hereby made their duty,

To open, alter, extend, widen, establish and vacate, and to grade, pave and otherwise improve, clean and keep in repair the sidewalks, streets, alleys, *wharfs*, docks, landings and other public grounds of said city;

To regulate the use of wharves and public landings, fix the rate of wharfage, and regulate the stationary anchorage and moorings of all boats and rafts within the city."

The question presented for decision is, whether the city, under the foregoing provisions of its charter in establishing wharves and landings, and prescribing rules and regulations for the anchorage and mooring of boats, rafts, etc., has the power to forbid a person owning a lot abutting upon the river, and upon which no wharf or public landing has been established, from using such lot as a wharf or landing without permission of the city and the payment of wharfage.

The charter confers upon the city the power to establish the wharves, docks and landings, and to fix the rate of wharfage, and also to regulate the stationary anchorage and mooring of all boats and rafts. The charter not only confers these powers, but, also, makes it the duty of the city to execute them.

It is a well-settled rule of construction that corporations have such powers as are expressly granted in their charter, and those which are necessary to enable them to carry into effect the powers expressly granted. 2 Kent's Com. 298; *The City of Davenport* v. *Kelly*, 7 Iowa, 102–106.

In the case of the *City of Davenport* v. *Kelly*, 7 Iowa, 102, it is held that where a city charter confers upon the council authority to establish and erect market-houses and market places, and provide for the government and regulation thereof, the right to establish necessarily carries with it

The City of Dubuque v. Stout.

the power to prohibit the exposing and offering for sale of meats at other places than where the council may designate. Chief Justice WRIGHT, in delivering the opinion in the case, says: "The city council had authority to erect market-houses, establish markets and market places and provide for the government and regulation thereof. If the right to establish markets and market places does not necessarily carry with it the power to prohibit the exposing and offering for sale of meats at other places than the council may designate, then the power given would practically amount to nothing. If they may establish market places, and yet any and every citizen may sell at any other place in the city than these market places, whether upon his own premises or otherwise, the power given would be an idle and a useless one. We cannot conceive how it would be possible to carry into effect the power given, unless the council may exercise the further power to confine such market sales to the places by them established." The case of *Buck and others* v. *Seabury*, 8 Johns. 418, is cited by the court as clearly in point, in which case the court says: "The fixing of the places and times at which markets shall be held and kept open, and the prohibition to sell at other places and times, is among the most ordinary regulations of a city and town police, and would naturally be included in the general power to pass laws relative to the public markets. If the corporation had not the power in question, it is difficult to see what useful purpose could be effected, or what object was intended, by the grant of the power to pass laws relative to the public markets. The mere regulation of the building, and of the stalls of those who might choose to go there instead of elsewhere to sell their market provisions, would be an idle and useless power, and of no moment toward the good government of the village." The same doctrine is maintained in *The Village of Buffalo* v. *Webster*, 10 Wend. 100; *Nightingale, petitioner*, 11 Pick. 167; *City of Raleigh*

v. *Sorrell*, 1 Jones, 49 ; *Stokes* v. *New York City*, 14 Wend. 87 ; and in *Le Claire* v. *The City of Davenport*, 13 Iowa, 212, the doctrine of the case of the *City of Davenport* v. *Kelly*, *supra*, above stated, was affirmed, although the case was overruled on another point.

These authorities, it seems to us, settle the principle involved in this case.

The charter confers upon the city the power, and makes it its duty, to establish the wharves, docks, and landings, to fix the rate of wharfage and to regulate the stationary anchorage and moorings of *all* boats and rafts.

As in the case of public markets, this grant of power to establish wharves and regulate the stationary anchorage and moorings of all boats and rafts necessarily confers the authority to fix the location and limits of the wharves and landings, and to prohibit the use of any other place for that purpose. The mere power to establish wharves and regulate them and the boats and rafts *choosing* to land there instead of elsewhere, would be " an idle and useless " power, and would be of no moment toward the good government of the city. On the contrary, if the owner of every lot abutting on the river within the city, not included in any of the public wharves, has the right, notwithstanding the grant in the city charter, to use his own lot front for the landing of his own lumber, he may also permit others to use it for the same purpose, and thus a number of private wharves would be enabled to render the public wharves useless, and destroy their entire benefit to the city and the public.

Again, a part of the grant is the power to regulate the wharfage to be paid by all boats and rafts landing within the city limits. If the grant did not give the power to prohibit the landing of boats and rafts at any other than the public wharves, the city might be deprived entirely of this power and of this revenue, for, as before remarked, the owners of lots in the same situation as that of defendant

could allow the landing of boats and rafts on their premises free of wharfage, or for less than the established rates, and thus defeat the object of the grant in this respect.

The language of the charter is broad, clear and unmistakable. It gives to the city the exclusive authority to establish and regulate wharves and docks within the city, to regulate wharfage and to regulate the stationary anchorage and mooring of *all* boats and rafts landing within the city limits, and, as a necessary part of this power, it may prohibit the establishment of other wharves or landings; prohibit the landing of boats or rafts at any other places than those prescribed in the regulations made by the city council. These are necessary police powers, which are conferred on the city for the good government of the people and the proper conduct of its commercial intercourse upon the great river upon which it is situated. The power to prohibit the landing of boats or rafts at other places than the public wharves is necessary, in order to the full exercise of the powers granted. This power is necessary also in order to protect the city in its revenues granted by the charter. Police regulations of this character are uniformly held legal and binding, because they are for the general benefit, and do not proceed to the length of impairing any private right in the proper sense of that term. The sovereign power in a community may prescribe the manner of exercising individual rights over property. They may prohibit the erection of wooden buildings, the keeping of gunpowder and other dangerous combustibles for sale within the city in greater than specified quantities; fix market places and regulate the times when they shall be open, and prohibit the sale of market produce at other places; and, on the same principles and for the same reasons, may establish and regulate wharves and landings, regulate the anchorage of all boats, rafts or other vessels landing within its limits, and, as a necessary incident to this power, may prohibit the landing of such boats and rafts at

any other place or places than as prescribed in the ordinances or by-laws made for that purpose. The exercise of these police powers "is for the better protection and enjoyment of that absolute dominion which the individual claims. The powers rest upon the implied right and duty of the supreme power to protect all by statutory regulations, so that, on the whole, the benefit of all is promoted. Every public regulation in a city may, and does, in some sense, limit and restrict the absolute rights of its citizens that existed previously. But this is not considered an injury; so far from it, the individual, as well as others, is supposed to be benefited." *Vanderbilt* v. *Adams*, 7 Cow. 349. See, also, in confirmation of these views, *Cooley* v. *Port Wardens*, 12 How. (U. S.) 312.

It follows that, upon principle and authority, the question before stated must be answered in the affirmative, and that the judgment of the district court must be

Reversed.