THE CITY OF KEOKUK v. THE KEOKUK NORTHERN LINE PACKET CO.

THE CITY OF FORT MADISON v. THE SAME.

THE CITY OF BURLINGTON v. THE SAME.

1. **Municipal Corporations:** WHARF: WHAT CONSTITUTES. Upon a non-tidal stream, any construction of timber or stone upon the bank, of such shape that a vessel may lie alongside of it with its broadside to the shore, constitutes a wharf, and a paved street extending to the water's edge and used by vessels as a place for receiving and discharging freight and passengers may be so designated.

2. ——: ——: WHARFAGE FEES. A city may prescribe by ordinance the fees which shall be paid for the use of the wharves within its limits, and this power is subject only to the limitation that such fees shall be reasonable.

3. ——: ——: ——. Wharfage fees thus levied do not constitute a tax, but are to be regarded simply as compensation exacted for the use of the wharves.

4. ——: ——: ——. In the exercise of their police powers cities may control the landing of boats, designating the places at which they shall receive and discharge freight and passengers, and collecting a reasonable compensation for wharfage. SEEVERS, CH. J., dissenting.

5. ——: WHARFAGE FEES: CONSTITUTIONAL LAW. An ordinance requiring the payment of wharfage fees is not unconstitutional, even though it exacts payment from vessels when they are moored at places where no wharves have been provided.

*Argument 1.* The city may control the landing of vessels and fix the places where they may receive and discharge freight and passengers.

*Argument 2.* Even conceding that part of the ordinance to be unconstitutional which authorizes the collection of wharfage fees from vessels that do not land at wharves, the remainder of the ordinance would not for that reason be void. SEEVERS, CH. J., dissenting.

6. ———: ———: TONNAGE DUTY. The fact that the wharfage fee is graduated by the tonnage of the vessel does not constitute a duty on tonnage, within the meaning of the Constitution of the United States forbidding the levying of such an impost.

*Appeal from Lee and Des Moines District Courts.*

WEDNESDAY, DECEMBER 13.

THESE are actions by the respective plaintiffs to recover charges for wharfage claimed to be due each under ordinances of the several cities providing therefor. The several petitions allege that defendant is indebted to the respective plaintiffs by reason of its boats landing at and using the wharves of each. The pleadings in each case being different, their substance must be separately set out. In the first case the petition alleges that the city of Keokuk is empowered by its charter to establish and regulate wharves and to fix the rates of wharfage for all boats landing or moored at such wharves; that at great expense it erected wharves upon the river within its limits and expended large sums in making additions thereto and keeping them in repair; that in order to raise money for such outlays, the city issued wharf bonds, which were negotiated, and to meet the interest and principal thereof, the city, by ordinance, fixed a wharfage fee to be paid by each boat or vessel using the wharves; that the boats of defendant landed at the wharves so constructed and improved by the city and there received and discharged freight and passengers. The petition seeks to recover wharfage under the city ordinance to the amount of the fees prescribed therein. The other pleadings in the case are set out in the abstract, upon which the case is submitted, in the following language:

"Defendants answered, admitting the city of Keokuk was a municipal corporation under a special charter; that defendant was a corporation organized under the laws of Missouri, and was engaged in navigating the Mississippi river with steamboats. They admit defendants landed their boats at Keokuk; admit that the wharfage was charged under the city ordinances of Keokuk; admit defendants have refused to pay such wharfage, and they set up and make part of their answer

sections 1, 2, 3 and 4 of the city ordinances relating to the collection of wharfage by the city, as follows:

"*Be it ordained by the City Council of the City of Keokuk:*

"'SECTION 1. That all the ground now lying or which shall be made hereafter, between Water street, in said city of Keokuk, and the middle of the main· channel of the Mississippi river, throughout the entire length of said city, is hereby declared a wharf and subject to be used for such purposes, and under such terms as are or may be prescribed by ordinance.

"'SEC. 2. That the whole of Water street, as well as the land described in the foregoing section, is hereby declared open for the use and purposes of a wharf, and subject to all the rules and regulations prescribed by ordinance for the government and regulation of the wharves of the city of Keokuk, and all boats, rafts and water craft of every description whatever, that are moored to or landed at any part of Water street, and the persons owning, claiming and having charge of the same, shall be subject to the same rules, regulations, wharfage and penalties as are provided by this ordinance in relation to boats, rafts and other water craft landing or mooring at the wharf as defined by the third section of this ordinance: *Provided*, Nothing contained in this section shall be construed to interfere with the use of Water street as a public street.

"'SEC. 3. That any steamboat which shall make fast to any part of said wharf or Water street, or to any vessel or other thing at or upon said wharf or street, or shall receive or discharge any passengers or freight thereon, or shall use any of said wharf or street for the purpose of discharging, receiving or landing any freight or passenger, shall, if the tonnage of said boat be less than fifty tons, be liable to a wharfage fee of one dollar; if the tonnage of said boat be less than one hundred tons and more than fifty tons, the same shall be liable to a wharfage fee of one dollar and fifty cents; all boats of one hundred tons and less than two hundred tons shall be liable to a wharfage fee of two dollars; all boats of two hundred tons and less than three hundred tons, shall pay a wharfage fee of three dollars; all boats of three hundred tons and less

than four hundred tons shall pay a wharfage fee of four dollars; and all boats of four hundred tons and upwards, the sum of five dollars; and all boats that shall remain at said wharf or street over two and less than five days, shall pay a wharfage fee of one dollar and fifty cents for each day after the first two days; and should said boat remain at said wharf or street over five days, said boat shall be liable to a wharfage fee of one dollar per day for every day it may remain at said wharf or street over five days. *Provided*, That the city council may fix by resolution the sum to be paid as wharfage by boats plying regularly between the city of Warsaw, Alexandria or Nauvoo—said wharfage fees to be paid by the owner, captain, clerk, mate or agents of said boats to the wharf-master or his deputy: *provided, further*, that boats engaged only in towing rafts, and only land at the wharf for the purchase of fuel or stores for its own use, shall be exempt from wharfage.

"' Sec. 4. That all crafts usually known and denominated barges, canal boats or keel boats, used in the carrying trade, whether in tow or otherwise, landing at the wharf of the city, shall be charged wharfage in accordance with their tonnage or carrying capacity, the same rates as are charged steamboats.'

"Defendants, for further answer, show that the boats named in the petition were each of more than twenty tons burden; were engaged in navigating the Mississippi river from St. Louis, Missouri, to St. Paul, Minnesota; engaged in commerce between the States of Minnesota, Iowa, Wisconsin, Illinois and Missouri, and landed at Keokuk, one of its regular ports; and while so employed, and during the time set out in the petition, were duly licensed and enrolled for the coasting trade under the acts of Congress for the regulation of commerce. That the ordinance under which plaintiff claims wharfage was and is illegal and void and in violation of the Constitution and laws of the United States, and such wharfage tax is illegal and plaintiff has no right to recover same from defendant.

"To this answer plaintiff demurred, because section 3 of the ordinance 59, under which plaintiff claims, is not illegal

and does not conflict with the provisions of the Constitution of the United States or the laws of Congress."

The demurrer was sustained by the court, and the defendant standing on its answer, judgment was rendered for plaintiff.

2. In the second case the petition in proper form claims to recover wharfage under an ordinance therein pleaded, containing the following provisions:

"1. Be it ordained by the city council of Ft. Madison, that all the ground lying along the Mississippi river within the corporate limits of the city of Ft. Madison, and known as public ground, is declared to be a wharf or landing, subject to be used for such purposes only under such regulations, and upon such terms as are hereinafter prescribed.

"2. Any steamboat which shall land or make fast at any part of the wharf or landing, or to any vessel or other thing, at or upon the wharf or landing, or shall receive or discharge any passenger or freight thereat, shall be liable and shall pay to the city wharfmaster a fee of one dollar for each landing, or day or part of a day it shall lay at the landing or wharf.

"7. By this section it is provided that any steamboat or other boat or raft landing for the purpose of purchasing supplies only, and remaining only while purchasing and taking on such, and neither discharging or taking on any passenger or freight, shall not be required to pay wharfage fees."

The other pleadings and proceedings in the case are set out in the abstract, upon which the case is presented to this court, as follows:

" To the petition the defendant answered, admitting the city was a corporation under the general laws of Iowa for municipal purposes, admitting defendant was a corporation duly organized under the laws of Missouri, engaged in navigating the Mississippi river; admitting their boats landed at the port of Ft. Madison, one of its regular ports in navigating said river, as set out in the exhibit; admitting the wharfage fees were charged under the ordinances of Ft. Madison; denying plaintiff's right to levy or assess such wharfage fees, and de-

fendants allege that the boats set out in such exhibit were each of more than twenty tons burden, and that they were each employed in navigating the Mississippi river from St. Louis, Missouri, to St. Paul, Minnesota, engaged in commerce between the states of Minnesota, Iowa, Wisconsin, Illinois and Missouri, and so landed at Ft. Madison, one of its regular ports, and that while so employed, and during the time shown by said exhibit, they each were duly enrolled and licensed for the coasting trade, under and by virtue of the laws of the United States, and in conformity with the several Acts of Congress, passed for the regulation of commerce and navigation; that the ordinance under which plaintiff claims wharfage was and is illegal and void, and is in violation of the Constitution and laws of the United States, and that the wharfage tax is illegal and void, and plaintiff has no right to recover same from defendant. And for further answer defendant alleged that the city of Ft. Madison had not built any wharf for the accommodation of boats landing at the city of Ft. Madison; that they have in places paved the street to the river, used by the citizens generally for all purposes of a street, for ferry landing, for pulling lumber from rafts, and that the street so paved by the city has been used by this defendant for a landing place, they having generally landed at the place designated by the wharfmaster of plaintiff, which was at the part of the street which had been paved by the city of Ft. Madison; that the river front of Ft. Madison, within its corporate limits, lying along the Mississippi river, is about two miles, being paved in these places in all about 600 feet only."

To this answer plaintiffs demurred because —

"1. The answer as a whole shows upon its face no defense in law, or as to the facts against plaintiffs' right to recover, and the same is insufficient in law.

"2. For that if defendants are engaged in commerce, it is no defense to their being charged by plaintiff as in petition claimed.

"3. And because in law said ordinances of plaintiff are legal and binding on defendant."

The demurrer was sustained, and, defendant standing on its answer, judgment was rendered for plaintiff.

3. In the third case the petition, in addition to other allegations, avers "that plaintiff is the owner of, and at great expense has paved and otherwise improved a certain wharf within its limits, for the purpose of creating and securing to steamboats landing at said city a convenient and secure wharf or landing place"; "that    *    *    *    defendant landed at said wharf with its steamboats," stating the name of the boats and the number of landings, and the charges therefor, and "that under the law of Iowa it is authorized to construct and regulate wharves, and to fix the fee or wharfage for landing thereat," and in pursuance of said authority the city passed the following ordinance providing for wharfage and fixing the rate of the same:

"SECTION 1. Be it ordained by the city council of the city of Burlington, that steamboats, keel boats, flat boats, and other water craft landing at, anchoring in front of, or within 100 feet of, any public landing belonging to or which may hereafter become the property of the city, or making fast to any part thereof, or to any vessel or other thing at or upon said wharf, or shall receive or discharge any passengers or freight, shall pay to the city at the rates following, for each and every such landing:

"All vessels and water craft under 100 tons at custom house measure....... ........................:.......$1 00
"All vessels and water craft over 100 tons, but under 200 tons........................................ 2 00
"All vessels over 200 tons........................... 3 00
"Each and every barge which shall be detached from any vessel or water craft and left at any wharf in this city.............,..........·...................... 1 00
"Flat boats and other craft running without regular license, and whose tonnage has not been certified.... ........ 50

"And each and every vessel or water craft above specified shall pay a second like and corresponding amount for every twenty-four hours it remains at said wharf or landing after its first

twenty-four hours; said sum of money to be paid by the owner, captain, agent, or person in charge thereof, to the wharfmaster. This section shall have no application to the regular ferries of the city; providing no skiff, canoe or sail boat shall be included in the above.

"SECTION 11. All that part of the city abutting on the Mississippi river and lying between the sidewalks on Front street and said river is hereby declared the public landing of said city.

"*Be it ordained by the City Council of the City of Burlington:*

"SECTION 2. That it shall be the duty of the Harbor Master to collect from all steamboats, boats, rafts, and other water craft, such rates of wharfage as is hereinafter specified, or may be hereafter enacted, and to keep a true account of the same and to pay the amount and make a full statement thereof to the city treasurer, once in each month. He shall assign places for all steamboats, rafts and water craft, and for all freight landed, and shall possess all requisite authority to cause the same to be removed to the places so assigned. *Provided*, That no boat or water craft shall be compelled to leave any place while discharging or receiving freight, unless a landing at such place shall be prohibited by ordinance, or another landing shall have been previously designated by the Harbor Master.

"SECTION 4. There shall be collected wharfage from each steamboat which shall land, anchor at, or make fast in front of and within one hundred feet from the public landings aforesaid, the sum of ($2.00) two dollars: *Provided*, That more than one landing within the term of twenty-four hours from the time of arrival and before departure for another port shall not subject any boat to additional wharfage; and from any steamboat remaining at the landing for a time exceeding twenty-four hours there shall be collected wharfage at one-half the above rate for each day of twenty-four hours during which said boat shall so remain after the day of her arrival.

"SECTION 5. That for the purpose of wharfage for all other

boats and water craft the entire frontage of the city shall be deemed the levee (except such part as is heretofore excepted), and all boats and water craft landing at or anchoring or making fast within one hundred feet on such frontage (not including skiffs), shall pay the city therefor the following amounts: All rafts, irrespective of size, shall pay fifty cents per day for each landing day of twenty-four hours duration so landing. All barges shall pay fifty cents per day for each day or landing so made. All flat, wood or trading boats shall pay fifty cents for each landing or day so made.

"SECTION 9. All that part of the city abutting on the Mississippi river, and lying between the sidewalks on Front street and said river, is hereby declared the public landing of said city."

The second count of defendant's answer to plaintiff's petition is in the following words:

"2. And by way of further answer they allege they were a corporation, duly organized under the laws of the State of Missouri. That all of the boats named in the petition are boats of more than twenty tons burden, and were navigating the Mississippi river, engaged in commerce between the States of Minnesota, Iowa, Wisconsin, Illinois and Missouri, carrying freight and passengers, and were each duly licensed and enrolled for the coasting trade under and by virtue of the laws of the United States and in conformity to the several acts of Congress passed for the regulation of commerce and navigation; that the ordinances under which the same were levied were and are void and illegal and in conflict with the Constitution and laws of the United States, and plaintiff has no right to recover the same from defendant."

To this count of the answer plaintiff demurred, on the ground that it presented no defense in law to plaintiff's claim. The demurrer was sustained, and defendant standing on its answer judgment was rendered against it.

Judgments having been entered against the defendant in the several cases, it appeals in each.

*Gillmore & Anderson* and *James H. Davidson*, for appellant.

*John Gibbon* for the appellee, the City of Keokuk.

*Casey & Hobbs* and *A. J. Alley*, for appellee, the City of Fort Madison.

*Samuel K. Tracy*, for appellee, the City of Burlington.

BECK, J.—I.  The same question is presented in each of these cases, and involves the validity of the ordinances of the several cities, which are plaintiffs in the respective actions, under which wharfage dues are claimed of defendant.  It is insisted that these ordinances are in conflict with several provisions of the Constitution of the United States, of the ordinance of 1787, and of the organic law of Wisconsin and Iowa, which forbid a State imposing imposts and duties on imports or exports and duties of tonnage; which forbid the states from regulating or levying taxes upon commerce, and which declare that the Mississsippi river shall be a common highway forever, free to all the citizens of the United States without any tax, duty, impost or toll therefor.  Constitution U. S., Art. 1, § § 8, 9, 10, Ordinance 1787, Art. 4; Organic Law Wisconsin Territory, Act April 20, 1836, Sec. 12; Act admitting Iowa into the Union, March 3, 1845, Sec. 3.

If the ordinances of the three cities which are brought in question in these actions are in contravention of any of these constitutional or statutory provisions of the United States, they are invalid, and no act or authority done or exercised under them can be supported.

It becomes necessary to inquire first as to the character and nature of the charges or fees called wharfage, which the respective plaintiffs seek in the several actions to recover.

II.  It will be observed by an examination of the pleadings in the cases that each city has erected wharves or steamboat landings upon the margin of the Mississippi river, within its boundary, for the use of steamboats and other vessels receiving and discharging freight and passengers at such city.  The pleadings show in each case that the charges, sought to be recovered under the name of wharfage, are for the use of

wharves or landings constructed and owned by the respective
cities, at which defendant's steamboats had made landings and
received and discharged freights and passengers.  In the first
and third cases the petitions allege the construction of the
wharves at which defendant's boats landed, by the respective
cities, the outlay of money by the cities for their construction
and repair, and their ownership by the municipalities.  These
allegations are not denied, but the defense pleaded to the
action is that the several ordinances are in conflict with the
Constitution.  The defendant claims that it is not liable under
these ordinances to wharfage for the use of wharves erected
by the cities, and kept in repair by them.  This is the
undoubted position assumed by the pleading.

III.   In the second case the defendant alleges in its answer
"that the city of Fort Madison had not built any wharf for the
1. MUNICIPAL    accommodation of boats landing at the city, that
corporations:   they have in places paved the streets to the river,
wharf: what
constitutes.    used by the citizens generally for all purposes of a
street, for ferry landing, for pulling lumber from rafts, and that
the streets so paved by the city have been used by this defend-
ant for a landing place; they (defendant) have generally landed
at the place designated by the wharfmaster of plaintiff, which
was at the part of the street which had been paved by the city
of Fort Madison."

It is very plain that the paved street at which defendant's
boats were landed comes within the designation of a wharf,
which is constructed of stone and earth or timber, for the con-
venience of vessels in landing.

Where there is a tide, or where it is demanded by the motion
of the water upon which the wharf is built, it extends into the
bay or stream.  Where there is little variation and sufficient
depth of the water, and a smooth surface, the wharf is con-
structed of stone or timber upon the beach so that the vessel
may lie broadside to the shore.  As a matter of fact, of which
we will take notice, all wharves upon the Mississippi river in
this state are constructed in the manner last described.  If it
be constructed upon, or is an extension of the street into the
river, it is none the less a wharf.  The answer of defendant'

clearly shows that it landed its vessels at such a wharf built by the city of Fort Madison.

We are amply justified in holding that the pleadings in each case show that defendant used a wharf in each city constructed and owned by the city for the use and accommodation of steamboats and other vessels.

No objection to the judgments can be well founded on the ground that the petitions in these cases do not claim to recover for the reasonable and just value of the use of the wharves, but for the wharfage fees fixed by the ordinances.

If these ordinances prescribed that each boat landing at an improved wharf should pay the fees fixed therein, and contained 2. ——: ——: no provisions for collecting wharfage except where wharfage fees. boats landed at improved wharves, the actions could be maintained for the wharfage fees for these reasons: The ordinances would be valid if the wharfage fees did not exceed just compensation for the use of the wharves. This cannot be doubted. The fees should be fixed and certain, and so graduated as to be equal upon all boats. The amount in each case should not be left to the caprice or judgment of the officer of the city collecting the fees. The power of the cities to fix, by ordinance, charges for wharfage, within the limits of just compensation, is recognized in *Cannon v. New Orleans*, 20 Wall., 557 (582). The only defense that could be made to the enforcement of valid ordinances of the character supposed, would be that the fees prescribed exceed just compensation and, therefore, operate as a tax upon commerce. The right to recover under the ordinance the fees prescribed therein, if a reasonable charge for the use of the wharves, would be admitted. The defense, therefore, that the fees are excessive should be pleaded. But in these cases the defendant has set up no such defense. Now if the ordinances are valid as to the wharves actually improved, which we shall hereafter see must be held, they may be enforced unless the defendant pleads and proves that the charges therein prescribed are beyond the limit of just compensation.

The questions raised in the pleadings involve the validity of the ordinances. It is not claimed that, if confined in their

operation to wharves actually improved, they are valid. Defendant cannot claim that they must be held invalid because plaintiffs have not averred in their petitions that the wharfage fees are reasonable. The answers of defendant, to which plaintiffs demur, set up that the ordinances are wholly void—void for every purpose. The questions before us arise upon plaintiffs' demurrer. Now, if it be proved that the ordinances are not wholly void, but are valid to sustain wharfage fees for the use of wharves actually improved, the demurrer is well taken.

. It may be remarked in this connection that the danger of fees and charges being levied under ordinances of the character of those involved in this action, whereby commerce may be affected, is purely imaginary, and does not in fact exist. If. fees be authorized amounting to a tax upon commerce, being beyond just compensation for the use of improved wharves, they cannot be collected. To be valid, they must be within the limits of just compensation.

IV. The question presented for our decision, under the pleadings in these cases, is this: Are the ordinances of the plaintiffs, providing for the collection of wharfage fees for the use of wharves built and owned by the respective cities, in conflict with the provisions of the Constitution and laws of the United States?

· These provisions are all intended to prohibit the levying of taxes upon the commerce of the country in the way of duties upon exports and imports, and imposts upon vessels engaged in commerce. The doctrines of the numerous cases,. cited by defendant's counsel, interpreting these provisions are familiar. Whatever may be regarded as taxes of this character, or may abridge the free use of the Mississippi river by all the citizens of the United States is in conflict with the laws, constitutional and statutory, of the Union. *Gibbons v. Ogden*, 9 Wheaton, 1; *Brown v. Maryland*, 12 Wheat., 419; *Smith v. Turner*, 7 How., 283; *Sinnot v. Davenport*, 22 How., 227; *Almy v. California*, 24 How., 169; *Steamship Co. v. Port Warden*, 12 Wal., 204; *Peete v. Morgan*, 19 Wal., 581; *Cannon v. New Orleans*, 20 Wal., 577; *Hockley v. Geiagity*, 34 N. Y., 332; *People v. Raymond*, 34 Cal., 492.

But the rule of these cases does not prevent a city from charging a reasonable compensation for the use of wharves erected by it for the convenience of commerce. And this is held in express words in *Cannon v. New Orleans*, 20 Wal., 577 (582). .·

Wharves are necessary or. convenient for vessels engaged in commerce, and when provided, though proper and reasonable charges are required for their use, they aid the prosecution of commerce. A municipal ordinance, therefore, which provides for wharfage fees which are not excessive cannot be regarded as a regulation affecting prejudicially the interests of commerce or the freedom of the river upon which it is constructed.

Such wharfage fees are not to be regarded as a tax. They are levied as a compensation for the use of the wharves. In the exercise of their police powers the cities of the State may control the landings of boats, designating the place they shall receive or discharge freight and passengers. It is within their power to require this to be done at these wharves and to charge reasonable compensation therefor. *The City of Dubuque v. Stout*, 32 Iowa, 80. This doctrine is founded upon the clearest reason, well understood by all persons familiar with the transaction of business upon the Mississippi river.

It cannot be doubted that wharves are not only convenient but necessary for the transaction of business with vessels navigating the river. They are necessary to enable consignees to receive and remove their goods and protect them from loss. The banks and margins of the river are in most cases of clay and alluvion. Goods delivered from vessels upon them in their natural state could not be handled and would be subject to injury on account of their muddy and swampy character. We have seen that cities may build wharves and charge for their use a sum that would be a just compensation. Now unless they have power to compel vessels to land at the wharves, the masters of vessels, in order to escape payment of wharfage fees, may discharge and receive cargoes on the natural banks of the river, to the inconvenience and loss of shippers and consignees. This power is necessary to enable the cities

to exercise their police authority in providing places for the landing of vessels. It has never been doubted that the police power of the State, exercised through the municipal corporations, may regulate in this way transactions connected with commerce. We will not be expected to cite authorities in support of a doctrine so familiar. It is fully recognized in the case which we now proceed to consider.

V. *Cannon v. New Orleans*, 20 Wal., 577, is confidently relied upon by defendant to support its claim of exemption from wharfage fees provided for by the ordinances of the cities brought in question in these actions. It was decided upon the following facts: The city of New Orleans made an ordinance providing that, "from and after the first day of January, 1853, the levee and wharf dues on all steamboats which moor or land in any part of the city of New Orleans shall be fixed as follows: ten cents per ton if in port not exceeding five days, and five dollars per day after said five days shall have expired."

Under this ordinance the action was brought to recover back money paid by the owner of a steamboat and to enjoin further collection under the ordinance. The United States Supreme Court held the ordinance invalid, regarding the dues collectible under it as a tax, not as compensation for the use of the wharf. This language is used: "A tax which, by its terms, is due from all vessels arriving and stopping in a port without regard to the place where they may stop, whether it be in the channel of the stream, or out in a bay, or landed at a natural river bank, cannot be treated as a compensation for the use of a wharf."

In the cases before us the wharfage fee is charged only against vessels landing or mooring to the wharves or to any vessels at the wharves, or, as in the last case, mooring within one hundred feet of the wharves.

But the controlling point of difference between that case and these now before us, is this: In these it appears that defendant did use the wharves erected by the cities, and there is no claim that the wharfage fees sought to be recovered are unreasonable. It does not appear that in *Cannon v. New Orleans*,

the boat owner used any wharf in the city; at all events, the fact that he did moor his vessel to the city wharf was not relied upon to support the right of recovery, and no question based thereon was presented to the court.

VI.   But it is claimed the ordinances in the case before us are void because they provide for wharfage fees where boats are not moored to a wharf; that all the river bank within the city is declared to be wharves, and the city cannot exact compensation from vessels that land at the bank where no wharves have been constructed.

5. ——: wharfage fees: constitutional law.

There are two answers to this objection.   The first is that under *The City of Dubuque v. Stout*, 32 Iowa, 80, the city may control the landing of vessels, fixing places by ordinance or otherwise where they shall receive and discharge freight and passengers.   The ordinances in these cases are intended to have the effect of preventing boats, in order to escape charges lawfully made for the use of a wharf, from discharging and receiving freight at places where no wharves have been constructed, which would be to the inconvenience and loss of shippers and consignees.

VII.   The other answer is this.   Statutes which are partly in conflict with the constitution will be held void no farther than as to those parts which are unconstitutional; provisions which are within the limits of legislative authority will be enforced.   *Santo v. The State*, 2 Iowa, 165; *Walters v. Steamboat Mollie Dozier*, 24 Iowa, 192; *The City of Des Moines v. Layman*, 21 Iowa, 153; *Childs v. Shower*, 18 Iowa, 261; *High School v. County of Clayton*, 9 Iowa, 175; *The County of Louisa v. Davison* 8 Iowa, 517; *The Dist. Tp. of Dubuque v. Dubuque*, 7 Iowa, 262; *Duncan v. Sigler*, Morris, 39.

City ordinances, like statutes, will be upheld to the extent of provisions authorizing the exercise of power clearly within the scope of the municipal authority, while other provisions in excess of such authority will be held void.   Dillon's Municipal Corporations, § 354, and notes.   But if the parts of the statute or ordinance be necessarily connected and dependent, the whole must fall with the void part.

The rule must be extended to the case of a statute or ordin-

ance authorizing two or more acts, one of which is within, and the other without, legislative authority. The first act when done under such statute or ordinance will be valid, the second void.

The several ordinances of the respective cities, it is insisted by defendant, authorize the collection of wharfage fees from boats that do not land at the wharves of the cities. This, for the purpose of the argument, may be admitted. They authorize the collection of the fees in cases where boats use the wharves owned by the cities. The collection of the fees in the first case, it may be here conceded, is not within municipal authority; in the second case it is not forbidden by the constitution and laws of the United States; it may be done in the last, but is forbidden in the first.

The doctrines presented in these views are not infrequently applied to taxation. Where taxes are levied by the same ordinance or act of a corporation, some of which are not authorized by its charter, these would be void; those within the corporate powers would be valid.

VIII. The point upon which we base our decision in these cases, namely, that the cities under the ordinances may recover for the actual use of improved wharves, was not made nor decided in *Cannon v. New Orleans.* The question discussed and decided in that case was whether the ordinance of New Orleans, in its full breadth, was valid. The Supreme Court of Louisiana held it valid in its every provision and to its full extent. It was not claimed in the United States Supreme Court that it would be valid against vessels using improved wharves, and void as to vessels landing at the natural bank of the river. We may not inquire why the point raised in these cases was not presented and discussed in that. It is sufficient to know that it was not, and of course no discussion was made thereon. The case is, therefore, not authority against the conclusion we reach, but as we have pointed out is in harmony therewith.

IX. The wharfage fees provided by the ordinances of the

6. ——: ——: cities of Keokuk and Burlington are based upon
tonnage duty. and fixed by the tonnage of the vessels landing at

the wharves. It is insisted that this is a tonnage duty and is obnoxious to Art. 1, § 10, par. 10, of the Constitution of the United States, which forbids the imposition by the states of such imposts.

It must be admitted that this constitutional inhibition is directed against taxation and is intended to protect therefrom the cargoes of vessels engaged in commerce. Imports and exports may be subjected to duties by charges levied upon vessels engaged in commerce. This is simply a form of taxation. The constitution, in the clause inhibiting duties upon tonnage, in terms forbids taxes levied in that manner; the word *duty* means a tax, toll, impost, or custom.

The wharfage fee charged under the city ordinances in question is in no sense a tax. It is a charge made as compensation for the use of the wharves built and maintained for the benefit of vessels engaged in commerce. The distinctions between such a charge and a tax, toll, impost, or custom is too obvious to admit of discussion.

The fact that the wharfage fee is graduated by the tonnage of the vessel does not require us to regard it as a "duty on tonnage." The tonnage of the vessels using the wharves of the cities affords a convenient and just measure of the fees charged, which should be varied according to the size of the boats, the larger occupying more space at the wharves than those of less capacity.

The foregoing discussion disposes of all points presented in the several cases. The judgment in each is

AFFIRMED.

SEEVERS, CH. J., *dissenting.*—My reasons for dissenting from the foregoing opinion are:

I. The right to recover a reasonable compensation is based on the fact that the boats of the defendant landed at the constructed wharves. There is no count in the petitions basing the right to recover on a *quantum meruit.* The theory upon which a recovery is sought is, that the plaintiffs possessed the power to establish and construct wharves; that by ordinance such have been established and constructed, and a compensa-

tion for their use fixed thereby. It is that compensation fixed by the ordinance for which a recovery is sought in these actions, and not a reasonable one for the voluntary use of wharves constructed by the city.

The compulsory use of anything can never be the basis of a reasonable compensation for its use. Under the ordinances the defendant was compelled to pay just as much if the vessels were landed anywhere in the city limits, or anchored in the stream, as at the constructed wharf. Whatever might be the rule under proper pleadings as to the recovery of a reasonable compensation, no such question is presented in the record in these cases.

II.  I am unable to distinguish the ordinances in question from that in *Cannon v. New Orleans*, 20 Wal., 577. The port of New Orleans was twenty miles in length, and the constructed wharf only two; but this fact was not deemed material by the court. If, however, it was of importance, the proportion of established to constructed wharf in the Fort Madison case is fully as great as in the New Orleans case — the established wharf being about two miles and the constructed about six hundred feet.

The ordinances in all the cases constitute the whole city front a wharf, and in one case the wharf extends to the middle of the main channel of the river, and in another to one hundred feet in front of any public landing. It is not shown in either of these cases along how much of the city front wharves have been constructed. If such wharves extend the whole length of the city front, the plaintiff should have so averred.

The burden was on the plaintiffs to establish such fact. It does not appear whether the vessel landed at the constructed wharf or not in the New Orleans case. It follows, however, that this circumstance, in the opinion of the court, made no difference, or it would have been alluded to. If the vessel landed, in the New Orleans case, at the constructed wharf, then, according to the opinion of the majority of this court, the judgment should have been in favor of the city. Evidently this fact, in the opinion of the Supreme Court of the United States, was not deemed material. It is intimated as the city

has, under the police power, the right to compel vessels to land at certain designated places within the limits of the city frontage, that it necessarily follows they may be compelled to land at a constructed wharf, and compensation collected therefor.

I do not impugn the correctness of the rule laid down in *Dubuque v. Stout*, 32 Iowa, 80; but I do deny that any such consequence as compensation for the use of the wharf follows. That case has nothing whatever to do with the subject under consideration. The decision is based solely on the police power, and has no bearing on the question whether these ordinances are void because in conflict with the Constitution of the United States. Even if wrong in this, I recognize the principle that in this class of questions the decisions of the Supreme Court of the United States are conclusive in this court. As I have said, these cases cannot be distinguished from the New Orleans case, and this court is bound thereby.

It is said in that case "the tax is therefore collectible for vessels which land at any point on the banks of the river, without regard to the existence of wharves." The same result must follow in the cases at bar, for the facts and purport of the ordinances are identical.

It is also said in that case: "The tax is also the same for a vessel which is moored in any part of the port of New Orleans, whether she ties up to a wharf or not, or is located at the shore or in the middle of the river." Here, again, the same result must follow, for the ordinances in this respect are identical.

It is further said in that case: "A tax which by its terms is due from all vessels arriving and stopping in a port, without regard to the place where they may stop, whether it be in the channel of the stream, or out in the bay, or landed at a natural river bank, cannot be treated as a compensation for the use of a wharf." Here, again, the cases at bar fulfill exactly all the conditions and limitations above stated. In the opinion of the majority of the court stress is laid on that portion of the opinion in the New Orleans case which intimates that a reasonable compensation may be recovered for the use of a con-

structed wharf. What is meant in that case as to such recovery is simply this: The power of the city is likened to that of an individual, and if the city under its charter has the power and does construct a wharf, a reasonable compensation may, by ordinance, be collected from vessels using it; but the city cannot, by ordinance, establish a wharf, construct it, and then provide that vessels landing at the natural bank of the river or mooring in the stream shall pay wharfage dues. Such dues are neither more or less than a tax for stopping in port, and not compensation for the use of the wharf.

If, under the police power, vessels may be required to land at the constructed wharf, and the right to compensation follows because of this compulsory use, then the Constitution of the United States is but a rope of sand, and vessels engaged in commerce on the navigable waters of the country are at the mercy of every municipality located on the borders of the stream. Such power might be so exercised as to annihilate and destroy the commerce of the Mississippi river.

It is maintained that one part of the ordinances may be held valid even though another portion be void. While I concede there is such a rule, I deny its application to the ordinances in question, for the reason that there is but a single subject matter contemplated thereby. There is nothing said as to constructed wharves or any charge made for landing vessels thereat. Nor do they contain two separate prohibitions relating to different acts with distinct penalties for each. I am, therefore, unable to see how one part can be held valid when another part is void, or rather how the subject matter can be separated or divided by judicial construction, when the ordinances define and contemplate but a single subject matter as a distinct whole. The length of this dissent forbids that I should further enlarge on this subject. In my opinion the judgment of the court below should be reversed.