## Case No. 15,103.

### UNITED STATES v. FISHER et al.

### [1 Wash. C. C. 4.] [1]

Circuit Court, D. Pennsylvania.    April Term, 1803.[2]

#### BANKRUPTCY—PRIORITY OF UNITED STATES.

Claim, by the United States, of priority of payment out of the effects of an insolvent and bankrupt debtor.

The action was brought to recover from the assignees of [Peter] Blight, a bankrupt, the amount of a protested bill of exchange endorsed by Blight, with damages, &c. as settled at the treasury. The bill was purchased by the cashier of the Bank of the United States, for the secretary of the treasury, and paid for by a warrant on the bank. It was protested, and notice given on the 11th of April, 1800. Blight having committed an act of bankruptcy, a commission issued against him on the 10th of April, 1801. On the 25th, a provisional, and on the 30th of May, an absolute assignment of his effects were made. Previous to these transactions, viz. in January, 1801, Blight had deposited a part of the cargo of the ship China with the collector of some port in Rhode Island, to secure the duties on that cargo; of which the commissioners having notice; they some time in April sent their messenger with a warrant to seize these goods as the property of Blight; and they gave notice of the claim of the commissioners to the collector and marshal of the district. On the 16th of June, 1801, an attachment was taken out in the name of the United States, and levied on the goods in the hands of the collector, for the debt due on account of the bill before mentioned; but they were afterwards delivered to the defendants, under an agreement that they should pay the debt due to the United States, if it should be decided that the United States were entitled to have the same first satisfied. An agreement has also been entered into on the part of the government and the defendants, that an action for money had and received should be brought, and the general issue to be pleaded, defendants to admit sufficient funds in their hands, of Blight's property, to pay the claim of the United States, but not enough to pay all his debts. The question to be, whether the debt due to the United States from Blight is first to be satisfied out of his money and effects, or any

part thereof, in the defendants' hands, by virtue of the attachment in their agreement mentioned, or of any acts of congress. If judgment in the affirmative, to be entered in favour of plaintiff for $——; if in the negative, to be entered generally for defendants.

Dallas contended that the 5th section of the act of the 3d March, 1797 (3 Laws [Folwell's Ed.], 423 [1 Stat. 515]), gives a priority to the United States in cases of insolvencies, in all cases whatsoever of debts due to the United States; and that the 62d section of the bankrupt law clearly protects and secures this right of priority, so as not to be affected or impaired by that law. That the United States not being within the operation of the bankrupt law, the attachment gave a priority to the claim of the United States. He principally relied upon the case of U. S. v. King [Case No. 15,536], decided in the late circuit court for this state.

Ingersoll and Tilghman opposed this construction, upon the ground that the act of 3d March, 1797, gave no preference to the United States, except against public agents; and therefore they are not in other cases to have a priority.

After a very long argument by these gentlemen, WASHINGTON, Circuit Justice, stopped Lewis, who was about to argue also for the defendants, and desired Dallas to conclude.

WASHINGTON, Circuit Justice (charging jury, after stating the case). The single question is, has the United States a right to be paid the whole of the debt due from the bankrupt out of his estate, in preference to the other creditors? This will turn entirely upon the construction of the act of the 3d March, 1797, and the bankrupt law; for I at once lay the attachment out of the case; because, unless the priority of the United States be established by those laws, the attachment, being laid after the assignment, could give no lien and no right of preference to the United States; for at that time the property belonged not to Blight, but to the assignees. This right of preference, upon prerogative principles, has been wisely disclaimed by the district attorney, who founds it upon a legislative grant solely. The 62d section of the bankrupt law [of 1800; 2 Stat. 36], declares, that "nothing contained in this law shall in any manner affect the right of preference to prior satisfaction of debts due to the United States, as secured or provided by any law heretofore passed, nor shall be construed to lessen or impair any right to or security in money due to the United States, or to any of them." Mr. Ingersoll seemed to suppose, that as the king is not within the operation of the bankrupt laws in England, this section was only intended to express, in regard to the United States, the same legal principle. Mr. Tilghman appeared to think that the United States had an election to come in under the commission and receive a dividend,

---

[1] [Originally published from the MSS. of Hon. Bushrod Washington, Associate Justice of the Supreme Court of the United States, under the supervision of Richard Peters, Jr., Esq.]

[2] [Reversed in 2 Cranch (6 U. S.) 358.]

or to refuse to do so, in which latter case the bankrupt's certificate would be no bar of her claim.

It is unnecessary to give any opinion, whether the United States may elect to come in under the commission or not, because this is not a question wherein they have put in any claim, or in which the bankrupt is endeavouring to protect himself by his certificate. The United States contend for a right to be paid the whole of their demand, and found this right on the section recited, and on the 5th section of the act of the 3d March, 1797 [1 Stat. 515]. The 62d section of the bankrupt law does not give a preference to the United States, but merely saves the right of the United States in cases where such a preference had by law been previously granted. This then brings me to the act of the 3d March, 1797, which, it is contended on behalf of the United States, gives them a preference in all cases of debts due to them, no matter by whom or on what account. The title of this law is "An act to provide more effectually for the settlement of accounts between the United States and receivers of public money." The objects of the 1st section are revenue officers and persons accountable for public money, and directs who shall institute suits against such of them as are delinquents, and declaring what interest shall be recovered. The 2d section defines the kind of evidence to be received in such suits, for establishing the demand. The 3d section directs the trial of the cause to take place at the return time. The 4th section provides for the defendant, and points out the mode in which he is to establish his credits, if he claims any. The 5th gives to the United States a preference in case of insolvency; and the 6th is upon the subject of execution after judgment obtained. The 5th section declares, that "where any revenue officer or other person thereafter becoming indebted to the United States by bond or otherwise, shall become insolvent," the debt due to the United States shall be first satisfied. The words "or other person," are certainly broad enough to comprehend every possible case of debts due to the United States, and the court is now called upon to give to this section its proper construction. On one side it is said, that the words must have a literal interpretation, so as to extend to all persons indebted to the United States; and on the other, a limited interpretation is contended for, so as to confine the meaning of those words to persons accountable for public money.

Where a law is plain and unambiguous, using either general or limited expressions, the legislature should be intended to mean what they have plainly expressed, and no room is left for construction. But, if from a view of the whole law taken together, or from other laws in pari materia, the evident intention is different from the import of the literal expressions used in some part of the law, that intention ought to prevail, for that in truth is the will of the law-makers. So, if the literal expressions would lead to absurd or unjust consequences, such a construction should be given as to avoid such consequences, if, from the whole purview of the law, it can fairly be made. These rules are founded in law, and in plain honest good sense; and I think will give us light enough to pursue the present inquiry with success. Now what would be the consequence of a literal construction in this case? Not only a preference and inequality in favour of the United States, but such as no prudent citizen could guard himself against. As to public officers and agents, they are or may be known, and any person dealing with them does it at the peril of having his debt postponed to that of the United States—he acts with his eyes open. But if this preference be extended to all persons dealing with the government, there is no mode by which other citizens can be put on their guard against them, and consequently all confidence between man and man will be destroyed. If however the law is so, it must be submitted to. But we must see if such consequences may not be avoided, by a fair and reasonable construction.

The object of the law, as declared by the title of it, is to provide for the effectual settlement of debts due from accountable agents to the United States. To effect this, suits are directed, the species of evidence to support the claim pointed out, a speedy trial provided, and a preference given to the United States in case of a deficiency of estate to satisfy the judgments. Here then is one entire connected system; the different provisions constituting the links of the same chain—the members of the same body. The title, though it cannot control the positive expressions of the law, may assist other parts of the law in limiting the extent of their meaning. It is admitted that the three first sections of the law apply to those only who are declared by the title to be the objects of the law: the 4th section is the first which uses general expressions, without a reference to those who had before been spoken of; but when we come to the 5th section, the reference is again taken up, with the addition of the words "or any other person;" and we are to say, to what extent these general expressions are to go. In the first place, what necessity was there for departing from the mode of expression used in the 4th section, which for the first time is general, without particular reference to any of the persons before described? Would it not have been as well in the 5th as in the 4th section, to say, that "where any individual hereafter becoming indebted to the United States, shall become insolvent," &c.? What reason can be given for the specification of one of the persons mentioned expressly in the first section, and intended by words of reference in the 2d and 3d, unless to show, that if the primary object of the law had

been interrupted by the 4th section, it was intended to be resumed in the 5th? Secondly: What necessity was there for the specification of revenue officers, if all persons whatsoever are comprehended, who are debtors of the United States? for those words would certainly have comprehended revenue officers. Unless they are construed to limit and restrain the generality of the other words, they are without any use whatever. If the preceding sections of the law had applied only to revenue officers, then, from necessity, we must have construed the words "any other person," as broad as their natural import would warrant; because we could derive no rule whatever, from the law itself, to limit the generality of the expression. But the law professing by its title to relate to all accountable agents, and the first section specifying amongst those accountable agents revenue officers, we have a rule by which to limit the generality of the expressions in the 5th section, viz. "or any other person accountable for public money," or, "or other person indebted as aforesaid." This construction renders the law uniform, and consistent with what it professes. And thirdly: The special wording of the 62d section of the bankrupt law, furnishes another strong argument in favour of this limitation of the 5th section of the law, more immediately under consideration. If the United States were entitled to a preference in every possible case of debts due to them, what necessity for speaking of "the right of preference to prior satisfaction of debts due to the United States, as secured and provided by any law heretofore passed"? This mode of expression was calculated to induce an opinion, that the legislature supposed there were some cases where the priority had not been provided for by law; for if otherwise, it would have been enough to declare, that the bankrupt law should not extend to or affect any debts due to the United States. Upon the whole, I am of opinion that the law is with the defendants.

The jury found a verdict for the defendants.

Upon an appeal, this judgment was reversed. U. S. v. Fisher, 2 Cranch [6 U. S.] 358, 396.

NOTE. In this case, the supreme court decided: (1) The acts of congress, securing to the United States a priority of payment out of the effects of their debtor, in all cases of insolvency or bankruptcy are constitutional. (2) The government is to pay the debts of the Union, and is authorized to use the means which appear to itself most eligible to effect that object. It has consequently a right to make remittances by bills or otherwise, and to take those precautions which render the transaction safe. (3) It is no objection to the claim of priority on the part of the United States, that it interferes with the right of the state sovereignties respecting the dignity of debts, and will defeat the measures they have a right to adopt to secure themselves against delinquencies, on the part of their own revenue officers. This result, so far as it may happen, is the necessary consequence of the supremacy of the laws of the United States, on all subjects to which the legislative power of congress extends. If the end

be legitimate, and within the scope of the constitution, all the means which are appropriate, which are plainly adapted to that end, and which are not prohibited, may constitutionally be employed to carry it into effect. Whart. Dig. 81, 82.