PEOPLE ex rel. BUNKER v. PACIFIC MAIL STEAM-SHIP Co.*

(*Circuit Court, D. California.* April 16, 1883.)

CONSTITUTIONAL LAW—REGULATION OF COMMERCE.

Section 2955 of the Political Code of California, so far as it requires the payment of 70 cents for each passenger, inspected to ascertain if he is afflicted with leprosy, coming into the United States by sea, and imposing a fine for non-payment upon the owners and consignees of the vessel bringing the passengers, is unconstitutional and void.

Demurrer to Complaint.

*W. W. Morrow,* for Chas. G. Bunker.

*Milton Andros,* for defendant.

SAWYER, J., (*orally.*) This is a demurrer to the complaint. The action is brought to recover $8,000, fees claimed to be due the

* From the Pacific Coast Law Journal.

state immigration commissioner for inspection of passengers. The Political Code of the state of California provides for the inspection of all passengers who arrive in this state from foreign countries by steamer, or other vessels, for the purpose of ascertaining whether any one or more of such passengers are afflicted with elephantiasis, or leprosy; and provides that the owner, captain, or consignee of the vessel-shall pay to the commissioner who makes the inspection the sum of 70 cents for each passenger so inspected, whether he is found to be suffering from this disease or not. It is also provided that the excess so collected over $4,000 and expenses, as compensation for the commissioner, shall, when required for the purpose, be paid into the treasury of the state, for the purpose of building a place where the persons afflicted with this disease shall be kept and taken care of, so that they shall not come in contact with the other people of the state.

It is contended that this provision of the Code is unconstitutional; that it interferes with the regulation of commerce.

I am unable myself to distinguish the case here presented from that of *People* v. *Compagnie Generale Transatlantique*, 2 Sup. Ct. Rep. 87, decided a few days ago by the supreme court of the United States. It seems to me that that decision covers this case precisely. In the head-notes of that decision it is stated that a New York state statute imposed a tax of one dollar on every passenger from a foreign country brought into New York upon vessels, under what is called an inspection law, which authorizes passengers to be inspected with reference to their being criminals, paupers, lunatics, orphans, or infirm persons, liable to become a public charge, with a view of preventing such persons from coming into the state, and with a view of returning them to the country from which they came. This tax was levied to pay the expense of inspection, and for such other purposes as might be provided. The statute is held to be a regulation of commerce within the exclusive power of congress. In the headnotes is the following language:

"The tax is not relieved from this constitutional obligation by saying in the title of the statute that it is in aid of a law called an inspection law, which authorizes passengers to be inspected with reference to their being criminals. paupers, lunatics, orphans, or infirm persons, liable to become a public charge."

The title of the New York statute is, "An act to raise money for the execution of the inspection laws of the state of New York." The first section provides:

"There shall be levied and collected a duty of one dollar for each and every alien passenger who shall. come by vessel from a foreign port to the port of New York, for whom a tax has not heretofore been paid; the same to be paid to the chamberlain of the city of New York by the master, owner, agent, or consignee of every such vessel within 24 hours after the entry thereof into the port of New York."

In the decision in the case referred to I find the following:

"The argument mainly relied on in the present case is that the new statute of New York, passed after her former statute had been declared void, is in aid of the *inspection laws of the state*. This argument is supposed to derive support from another statute passed three days earlier, entitled 'An act for the inspection of alien emigrants and their effects by the commissioners of emigration.'"

The fact that there are two different statutes makes no difference. One refers to the other, and they are to be construed together as one statute. In its decision the court goes on to say:

"'This act empowers and directs the commissioners of emigration 'to inspect the persons and effects of all persons arriving by vessels at the port of New York from any foreign country, as far as may be necessary, to ascertain who among them are habitual criminals, or paupers, lunatics, idiots, or imbeciles, or deaf, dumb, blind, infirm, or orphan persons without means or capacities to support themselves, and subject to become a public charge, and whether their persons or effects are affected with any infectious or contagious disease, and whether their effects contain any criminal implements or contrivances. * * *' These two statutes, construed together, it is argued, are inspection laws within the meaning of article 1, § 10, clause 2, of the constitution of the United States, to-wit: 'No state shall, without the consent of congress, lay any imposts or duties on imports or exports, except what may be absolutely necessary for executing its inspection laws.'"

Then the court goes on to discuss the question, and holds that this is not an inspection law within the meaning of the constitutional provision; that the inspection laws refer to the importation of goods and not to passengers. The court then proceeds:

"It is apparent that the object of these New York enactments goes far beyond any correct view of the purpose of an inspection law. The commissioners are 'to inspect all persons arriving from any foreign country to ascertain who among them are habitual criminals, or paupers, lunatics, idiots, or imbeciles, * * * or orphan persons, without means or capacity to support themselves, and subject to become a public charge.'"

The object of the statute of this state is substantially the same—to provide for the inspection of passengers, to ascertain whether any of them have a particular disease.

"Another section," the court says, "provides for the custody, the support, and the treatment for disease of these persons, and the retransportation of criminals. Are these inspection laws? Is the ascertainment of the guilt of a crime to be made by inspection? In fact, these statutes differ from those heretofore held void only in calling them in their caption 'inspection laws,' and in providing for payment of any surplus, after the support of paupers, criminal, and diseased persons, into the treasury of the United States,—a surplus which, in this enlarged view of what are the expenses of an inspection law, it is safe to say will never exist. A state cannot make a law designed to raise money to support paupers, to detect or prevent crime, to guard against disease, and to cure the sick, an inspection law, within the constitutional meaning of that word, by calling it so in the title."

So, if you christen it a police regulation, or by any other name, it will make no difference. It is not an inspection law. The present case comes precisely within this case referred to, in my view. I dispose of it upon that ground. These acts, alleged in the complaint in this case, have occurred since the third day of August, 1882. But, in the case referred to, the court intimates that congress has passed a law which, if it did not cover these cases before, cuts up this whole subject by the roots. In the decision it is stated:

"Since the decision of this case in the circuit court, congress has undertaken to do what this court has repeatedly said it alone had the power to do. By the act of August 3, 1882, entitled 'An act to regulate immigration,' a duty of 50 cents is to be collected, for every passenger not a citizen of the United States, who shall come to any port within the United States by steam or sail vessel from a foreign country, from the master of said vessel by the collector of customs. The money so collected is to be paid into the treasury of the United States, and to constitute a fund to be called the immigrant fund, for the care of immigrants arriving in the United States, and the relief of such as are in distress. The secretary of the treasury is charged with the duty of executing the provisions of the act, and with supervision over the business of immigration. No more of the fund so raised is to be expended in any port than is collected there. This legislation covers the same ground as the New York statute, and they cannot co-exist."

Under that decision, I think that this provision of the Political Code of California is unconstitutional, and the defendants are not liable to pay the amount named, 70 cents, for the passengers examined, or the fine imposed for non-payment.

The demurrer is sustained, and judgment will be entered for defendants on the demurrer.