## "THE HEAD-MONEY CASES."[1]

### EDYE and others *v.* ROBERTSON. (Five Cases.)[1]

*(Circuit Court, E. D. New York.* September 5, 1883.)

**1. CONSTITUTIONAL LAW—REGULATION OF COMMERCE—LICENSE TAX ON VESSELS BRINGING ALIEN PASSENGERS—ACT OF AUGUST 3, 1882.**

The act of congress of August 3, 1882, (22 St. at Large, 214,) entitled "An act to regulate immigration," which levies a duty of 50 cents for every passenger not a citizen of the United States who shall come by steam or sail vessel from a foreign port to any port within the United States, to be paid to the collector of customs of the port to which such passenger shall come, by the master, owner, agent, or consignee of every such vessel, is a regulation of commerce with foreign nations, within the provisions of article 1, § 8, of the constitution of the United States.

**2. SAME—CAPITATION TAX.**

The duty thus levied is not within the provision of article 1, § 9, of the constitution, that "no capitation or other direct tax shall be laid, unless in proportion to the census." The act is an act regulating commerce, and authorizing the commerce in question on conditions to be observed, and the duty is a license fee, measured by the number of passengers. It is not a capitation tax, but a tax on the owner of the vessel, and on the business of bringing in alien passengers.

**3. SAME—UNIFORMITY OF TAXATION—GENERAL WELFARE.**

The act is not in violation of article 1, § 8, of the constitution, providing that "congress shall have power to lay and collect taxes, duties, imposts, and excises, to pay the debts and provide for the common defense and general welfare of the United States; but all duties, imposts, and excises shall be uniform throughout the United States." It is not passed in the exercise of the power of laying taxes, but of regulating commerce. The tax being a license tax, the rule of uniformity is sufficiently observed, inasmuch as the tax extends to all persons of the class selected by congress; that is, to all steam and sail vessels coming to all ports in the United States, from all foreign ports, with all alien passengers. And the case is not one where a court can say that the tax is not laid for the general welfare of the United States.

**4. SAME—CONFLICT WITH PRIOR TREATIES.**

The act in question is not in violation of treaties in existence before the act was passed, between the United States and the various foreign countries of which the owners of the vessels bringing the passengers were citizens or subjects, which provided for freedom of commerce or navigation, since it applies to citizens of the United States and their vessels as well. *Semble*, that even if the act were in conflict with the prior treaties. it would supersede them, under article 6 of the constitution, providing that all laws and all treaties shall be the supreme law of the land in equal degree.

[1] Reported by R. D. & Wyllys Benedict, of the New York bar.

*5.* SAME—PASSENGERS UNDER ONE YEAR OF AGE.

> Under the provisions of the act, each child under one year of age is to be counted as a passenger.
>
> *Henderson* v. *Mayor*, 92 U. S. 259, cited; *People* v. *Comp. Gen. Trans.* Cir. Ct., 10 FED. REP. 357; Sup. Ct., 107 U. S. 59, [S. C 2. Sup. Ct. Rep. 87,] cited.

At Law.

*P. J. Joachimsen,* for plaintiffs.

*A. W. Tenney,* Dist. Atty., for defendant.

BLATCHFORD, Justice. This is a suit at law to recover back moneys paid under protest to the collector of the port of New York, by the plaintiffs. It has been tried before the court without a jury, on an agreed statement of facts, the material parts of which are as follows: The plaintiffs are partners in trade in the city of New York, and carry on a business of transporting passengers and freight on the high seas, between Holland and the United States, as consignees and agents. In October, 1882, there arrived at the port of New York, from Holland, a ship owned by citizens of Holland, carrying 382 persons, not citizens of the United States, among whom were 20 under the age of one year, and 59 between the ages of one year and eight years. On the arrival of the ship, the master, in pursuance of section 9 of the passenger act of August 2, 1882, delivered to the proper officers the lists of passengers, with the specifications, required by that section, from which it appeared that said 382 persons were all subjects of Holland or other foreign powers in treaty with the United States. The collector, before allowing complete entry of the vessel, decided that the plaintiffs must pay a duty of 50 cents for each of said 382 passengers, being $191. By the regulations of the treasury department the non-payment of the $191 would have permitted the defendant to refuse the complete entry of the vessel, or to refuse to give her a clearance from the port of New York to her home port, and such imposition would have created an apparent lien on the vessel for that sum. On the demand of the defendant the plaintiffs paid said sum under a protest, of which a copy is put in evidence, and appealed to the secretary of the treasury, who sustained the action of the defendant, and this suit was brought within 90 days after the rendering of such decision. The payment was levied and made under the act of August 3, 1882, entitled "An act to regulate immigration." 22 St. at Large, c. 376, p. 214.

The principal question involved in this case is as to the constitutional validity of the said act. It provides as follows:

"That there shall be levied, collected, and paid a duty of fifty cents for each and every passenger not a citizen of the United States who shall come by steam or sail vessel from a foreign port to any port within the United States. The said duty shall be paid to the collector of customs of the port to which such passenger shall come, or if there be no collector at such port, then to the collector of customs nearest thereto, by the master, owner, agent, or consignee of every such vessel, within twenty-four hours after the entry thereof into such port. The money thus collected shall be paid into the United States treasury, and shall constitute a fund to be called the immi-

grant fund, and shall be used, under the direction of the secretary of the treasury, to defray the expense of regulating immigration under this act, and for the care of immigrants arriving in the United States, for the relief of such as are in distress, and for the general purposes and expenses of carrying this act into effect. The duty imposed by this section shall be a lien upon the vessels which shall bring such passengers into the United States, and shall be a debt in favor of the United States against the owner or owners of such vessels; and the payment of such duty may be enforced by any legal or equitable remedy; provided, that no greater sum shall be expended for the purposes hereinbefore mentioned, at any port, than shall have been collected at such port.

"Sec. 2. That the secretary of the treasury is hereby charged with the duty of executing the provisions of this act and with supervision over the business of immigration to the United States, and for that purpose he shall have power to enter into contracts with such state commission, board, or officers as may be designated for that purpose by the governor of any state to take charge of the local affairs of immigration in the ports within said state, and to provide for the support and relief of such immigrants therein landing as may fall into distress or need public aid, under the rules and regulations to be prescribed by said secretary; and it shall be the duty of such state commission, board, or officers so designated to examine into the condition of passengers arriving at the ports within such state in any ship or vessel, and for that purpose all or any of such commissioners or officers, or such other person or persons as they shall appoint, shall be authorized to go on board of and through any such ship or vessel; and if, on such examination, there shall be found among such passengers any convict, lunatic, idiot, or any person unable to take care of himself or herself without becoming a public charge, they shall report the same in writing to the collector of such port, and such persons shall not be permitted to land.

"Sec. 3. That the secretary of the treasury shall establish such regulations and rules and issue from time to time such instructions not inconsistent with law as he shall deem best calculated to protect the United States and immigrants into the United States from fraud and loss, and for carrying out the provisions of this act and the immigration laws of the United States; and he shall prescribe all forms of bonds, entries, and other papers to be used under and in the enforcement of the various provisions of this act.

"Sec. 4. That all foreign convicts except those convicted of political offenses, upon arrival, shall be sent back to the nations to which they belong and from whence they came. The secretary of the treasury may designate the state board of charities of any state in which such board shall exist by law, or any commission in any state, or any person or persons in any state whose duty it shall be to execute the provisions of this section without compensation. The secretary of the treasury shall prescribe regulations for the return of the aforesaid persons to the countries from whence they came, and shall furnish instructions to the board, commission, or persons charged with the execution of the provisions of this section as to the mode of procedure in respect thereto, and may change such instructions from time to time. The expense of such return of the aforesaid persons not permitted to land shall be borne by the owners of the vessels in which they came."

In view of decisions made by the supreme court there can be no doubt that this act is a regulation of commerce with foreign nations.

In *Henderson* v. *Mayor*, 92 U. S. 259, a statute of New York, containing provisions in substance like those in this act, was held to be a regulation of commerce with foreign nations, and intended to regulate commercial matters not only of national but international

commerce, which are best regulated by one uniform rule applicable alike to all the seaports of the United States; and the statute was held to be void because legislation on the subject covered by it was confided exclusively to congress, by article 1, § 8, of the constitution of the United States, which confers power on congress "to regulate commerce with foreign nations." By the statute of New York the master of a vessel, arriving at the port of New York from a foreign port, was required to give a bond for each passenger not a citizen of the United States, conditioned to indemnify against expense for the relief or support of such passenger for four years, with the alternative of commuting for the bond by paying for the passenger, within 24 hours after his landing, the sum of $1.50. In default of giving the bond, or paying the commutation tax, a penalty of $500 for every such passenger was imposed, which was made a lien on and enforceable against the vessel. Although the penalty for failure to pay did not accrue till 24 hours after the passenger was landed, it was held, in the *Henderson Case*, that the penalty was incurred by the act of landing him without payment, and that it was, in fact, for the act of bringing him into the state.

In the case of *People* v. *Compagnie Generale Transatlantique*,—Sup. Ct., 107 U. S. 59; [S. C. 2 Sup. Ct. Rep. 87;] Cir. Ct., 10 FED. REP. 357,—at the last term of the United States supreme court, a subsequent statute of New York, requiring the master, owner, agent, or consignee of every vessel bringing an alien passenger from a foreign port to the port of New York to pay a duty of one dollar for each such passenger, within 24 hours after the entry of the vessel into port, was held void on the ground that such a tax was "a regulation of commerce with foreign nations, confided by the constitution to the exclusive control of congress."

But it is contended that because the act of congress, now in question, in regulating commerce, imposes a duty of 50 cents for each passenger, not a citizen of the United States, who comes by steam or sail vessel from a foreign port to a port within the United States, it violates several provisions of the constitution.

It is said that the duty is a capitation tax, and that article 1, § 9, of the constitution requires that "no capitation or other direct tax shall be laid, unless in proportion to the census." But the act is manifestly, in its general purpose and effect, an act regulating commerce. It was passed because state laws of the same character had been held void. It applies to all the sea-ports of the United States, and to all steam-vessels and all sail-vessels coming from a foreign port. Having power to prohibit the commerce in question, congress had power to authorize it on conditions to be observed. Such conditions are regulations. The permission to bring in alien passengers in steam or sail vessels from foreign ports, on paying the duty, is, in fact, the granting of a license to carry on such commerce, and the duty is a license fee, measured by the number of passengers. Grant-

ing such license, for a fee, is regulating commerce. The tax or duty or fee is a part of the regulation, and it should be clearly shown that there is no power in congress to exact the duty. This is not shown.

Besides, this tax is not within the definition of a capitation tax, as always recognized. It is not a tax on the poll, without regard to property, business, or other circumstances. *Hylton* v. *U. S.* 3 Dall. 171. It is a tax on the owner of the vessel, and made a lien on his vessel, because he brings alien passengers in his vessel. It is a tax on the business he carries on, measured by the number of such passengers. Being imposed to regulate commerce, it is not to be regarded as a tax on the alien passenger, in the sense of a capitation tax, even though the presumption may be that the owner will make the passenger pay the tax.

It is also said that the act violates the following provisions of article 1, § 8, of the constitution: "The congress shall have power to lay and collect taxes, duties, imposts, and excises, to pay the debts and provide for the common defense and general welfare of the United States; but all duties, imposts, and excises shall be uniform throughout the United States." The argument is that this is a tax or duty; that it is not collected to provide for the general welfare of the United States; and that it is not uniform throughout the United States, because aliens may come to the United States from a foreign port by other vessels than steam or sail vessels, and by other means than by a vessel, and no duty is imposed for them.

The answer to this view is, that the act is not passed in the exercise of the power of laying taxes. As before said, the business of bringing aliens in these vessels, instead of being prohibited, as it might have been lawfully, is permitted on payment of this license fee, and the moneys collected are made a special fund, to be devoted exclusively to the purposes named in the act,—the expense of regulating immigration, the care of immigrants, the relief of such as are in distress, and the general purposes and expenses of carrying the act into effect. These expenses are fairly limited, and to be limited, to purposes which are within the regulation of commerce, and to objects fairly made necessary by the exercise of the privilege or license granted. It is not, for the purpose of invalidating the act, to be intended that the objects specified in the act go beyond what is constitutional, or that abuses will be allowed in executing the act. None are alleged. If any shall appear, it is to be presumed that congress will so legislate on the subject as to avoid all excess of power. No such excess appears in the act.

Aside from this, the tax applies uniformly to all steam and sail vessels coming to all ports in the United States, from all foreign ports, with all alien passengers. The tax being a license tax on the business, the rule of uniformity is sufficiently observed if the tax extends to all persons of the class selected by congress; that is, to all

owners of such vessels.    Congress has the exclusive power of select-
ing the class.    It has regulated that particular branch of commerce
which concerns the bringing of alien passengers on steam and sail
vessels from foreign ports, and has selected such vessels and their
owners for taxation everywhere throughout the United States.

The case is not one where a court can say the tax is not laid for
the general welfare of the United States.    No court can say that it
is not for the general welfare of the United States to lay such a tax
as this to defray the expense of regulating the immigration of aliens,
and of caring for immigrants as they arrive, and of relieving such as
are in distress when they arrive, and of supervising the business, and
of supporting and relieving such immigrants as may fall into dis-
tress or need public aid, and of protecting the United States and the
immigrants from fraud and loss.    As the ship-owners have the priv-
ilege of bringing the immigrants here, and setting before them the
inducements to come, it is for the general welfare of the United States
that those who come shall be directed to their destinations, and guarded
from being defrauded and robbed on arrival, and kept from becom-
ing at once a public charge through want of means, if needy.    It is
a tax laid to create a fund to be so used, which it must be assumed
congress has said is a tax laid to provide for the general welfare of
the United States; and it is not the province of a court to say to the
contrary.    The course of legislation and judicial decision shows that
the objects specified in this act are objects which can be attained only
through enactment by congress, which shall operate equally through-
out the states, and are thus for the general welfare of the United
States.

In respect to this case, and other cases arising under the act, it is
alleged that treaties existed before the act was passed between the
United States and the various foreign countries of which the owners
of the vessels bringing the passengers were citizens or subjects, and
that the act violates the treaties in imposing the tax.    The argument
is, that the tax is really a tax on the passenger, and that the treaties
forbid the laying of the tax.    Inasmuch as the tax is laid on owners
who are citizens of the United States and their vessels, as well as
on foreign owners and their vessels, engaged in the same business,
and because of that business, it is not perceived how there is any
violation of any provision of any treaty, or how any provision for
freedom of commerce or navigation, properly construed, can require
more than this.    Otherwise, the one nation would be prevented,
under such provisions, from imposing on any goods imported from
the other any higher duties than those imposed by the latter on like
goods coming from the former.    There is all the freedom of com-
merce and navigation which the treaties require, when all persons
engaged in a given business are treated alike, in the way of license
fee or taxation.    The passengers do not carry on the commerce or
navigation by being passengers in the vessel, and there is no viola-

tion of the true meaning of any treaty, in imposing the tax only for passengers who are not citizens of the United States.

But, aside from this, the act of congress, if in conflict with the prior treaties, supersedes them. It is provided as follows by article 6 of the constitution: "This constitution, and the laws of the United States which shall be made in pursuance thereof, and all treaties made, or which shall be made, under the authority of the United States, shall be the supreme law of the land." The constitution requires that judicial officers shall be bound by oath to support the constitution. This requires them to see that both laws and treaties shall be the supreme law in an equal degree, neither more than the other. By article 2, § 2, of the constitution, the president has power, by and with the advice and consent of the senate, to make treaties. So far, the treaties are only compacts, binding on the two contracting parties, as between themselves as nations. But, when it is further provided that all laws becoming such in the manner provided in the constitution, and all treaties, shall be the supreme law of the land, treaties become law, and laws become law, and judicial officers must treat both as of equal weight. A treaty is not the law of the land at all, and is nothing but a contract, except by virtue of the clause which makes treaties and laws equally the law. Without that clause a treaty would not supersede a prior conflicting statute. As it does, so it must itself be, as the supreme law of the land, superseded by a subsequent conflicting statute; otherwise, the clause as to laws and treaties being both of them the supreme law would have no operation. A treaty would, as against a prior conflicting statute, have no effect as the supreme law until a new statute had abrogated the old statute, and a statute would, as against a prior conflicting treaty, have no effect as the supreme law until a new treaty had superseded the old treaty. The judicial decisions are to that effect. *Taylor* v. *Morton*, 2 Curt. C. C. 454; *The Cherokee Tobacco*, 11 Wall. 616; *Ropes* v. *Clinch*, 8 Blatchf. C. C. 304; *The Clinton Bridge*, 1 Woolw. 155; *Bartram* v. *Robertson*, 15 Fed. Rep. 212.

It is urged that children under one year of age are not passengers, under the provisions of the act, so as to be chargeable with the duty, because in section 1 of the act of August 2, 1882, (22 St. at Large, c. 374, p. 186,) "to regulate the carriage of passengers by sea," it is provided that in calculating the number of cubic feet of space to be allowed for each passenger, in a vessel bringing passengers other than cabin passengers from a foreign port, children under one year of age shall not be included. It is also urged that two children between one and eight years of age should be counted as one passenger, because it is so provided in section 1 of the last-named act, in regard to the cubic feet of space. The two statutes have no relation to each other. Each of the children is a passenger, and is to count as one passenger unless expressly excluded. In respect to cubic feet of space for sanitary purposes, there is a special provision in the one statute

as to children.  In respect to the tax for the business, there is no special provision in the other statute regarding children, and each person carried is a passenger.

There must be a judgment for the defendant, with costs.  The same result is reached in regard to the other actions tried by the court at the same time, brought against the same defendant, for like causes of action, the facts being of the same character as in this suit. Those suits are brought by the Liverpool & Great Western Steam Company, the Nord Deutscher Lloyd, Die Hamburg Amerikanische Packet Actien Gesellschaft, and De Koninglyk Nederlandsch Stoomvaart Maatschappy.

---

POWERS OF UNITED STATES GOVERNMENT.  By the revolution the powers of government devolved upon the people of the United States;[1] the body of electors composing the state;[2] the sovereign people; every citizen being a constituent member,[3] who had the power to invest the general government with all the powers they might deem proper and necessary, and to prohibit the states from exercising any powers incompatible with the objects of the general compact.[4]  The government of the United States is one of delegated powers alone, limited in the number of powers enumerated in the federal constitution, but supreme within the scope of its delegated powers,[5] while state constitutions are but limitations on sovereign powers already existing;[6] and it is clothed with absolute sovereignty to the extent of its powers,[7] separate and distinct from state sovereignty,[8] although they may operate on the same subject;[9] but in case of conflict the general government is supreme.[10] The powers actually granted must be such as are expressly given, or given by necessary implication;[11] and in the exercise of all those means, and the employment of all those agencies and instrumentalities, "necessary and proper for carrying into execution its granted powers," the government of the United States is as supreme and independent as the states which created it.[12]  Whenever any act done under its authority is challenged, the proper sanction must be found in its charter, or the act is *ultra vires* and void.[13]  The constitution divides the government into three departments,—the executive, legislative, and judicial,—the lines of separation being clearly defined and closely followed, neither being permitted to encroach on the power exclusively confided to the other.[14]  Among the powers expressly granted is the power of taxa-

---

[1] McCulloch v. Maryland, 4 Wheat. 316; Dartmouth College Case, 4 Wheat. 518; Green v. Biddle, 8 Wheat. 1; Ogden v. Saunders, 12 Wheat. 213; Cherokee Nation v. Georgia, 5 Pet. 1.

[2] Penhallow v. Doane, 3 Dall. 93.

[3] Scott v. Sandford, 19 How. 404.

[4] Martin v. Hunter's, Lessee, 1 Wheat. 325.

[5] U. S. v. Cruikshank, 92 U. S. 550; 1 Woods, 308; McCulloch v. Maryland, 4 Wheat. 316; Scott v. Sandford, 19 How. 393; Ableman v. Booth, 21 How. 506; Lane Co. v. Oregon, 7 Wall. 76; Dobbins v. Erie Co. 16 Pet. 435; Gibbons v. Ogden, 9 Wheat. 1; Briscoe v. Bank of Ky. 11 Pet. 257; Frasher v. State, 3 Tex. Ct. App. 273; Fifield v. Close, 15 Mich. 505; State v. Garton, 32 Ind. 1; State v. Gibson, 36 Ind. 389; People v. Brady, 40 Cal. 198; Bradwell v. State, 16 Wall. 130.

[6] Ohio Life Ins. & T. Co. v. Debolt, 16 How. 428.

[7] Metrop. Bank v. Van Dyck, 27 N. Y. 407.

[8] Ableman v. Booth, 21 How. 506; Newell v. People, 7 N. Y. 93; People v. N. Y. Cent. R. Co. 24 N. Y. 486; Metrop. Bank v. Van Dyck, 27 N. Y. 411.

[9] Brown v. Maryland, 12 Wheat. 419; Weston v. Charleston, 2 Pet. 449; Dobbins v. Erie Co. 16 Pet. 435; Collector v. Day, 11 Wall. 113; Nat. Bank v. Com. 9 Wall. 353; Sweatt v. Boston, etc., R. Co. 5 N. B. R. 249; Passenger Cases, 7 How. 283; Tarble's Case, 13 Wall. 397.

[10] Tarble's Case, 13 Wall. 397; Matter of Farrand, 1 Abb. (U. S.) 146.

[11] Andrews v. Auditor, 28 Grat. 121.

[12] Id.; Bank of Commerce v. N. Y. City, 2 Black, 620; Bank Tax Case, 2 Wall. 200; Osborn v. Bank of U. S. 9 Wheat. 738.

[13] Pacific Ins. Co. v. Soule, 7 Wall. 444.

[14] Kilbourn v. Thompson, 103 U. S. 168; Ex parte Stephens, 70 Mass. 559; Hayburn's Case, 2 Dall. 409, note.

tion,[1] which is also granted by necessary implication as a means in the exercise of other powers expressly granted;[2] and the exercise of this power is vested in the legislative department, with which the judiciary cannot interfere.[3]

CONSTITUTIONAL CONSTRUCTION. Like every other grant, the constitution is to have a reasonable construction, according to the import of its terms,[4] as defined in the vocabulary of the nation which adopted it.[5] It should be so construed as to give effect to its different clauses, and, as far as possible, to reconcile them, and not let their seeming repugnancy destroy them;[6] and it must receive a practical construction.[7] So a construction long carried into practice, though not sanctioned by judicial authority, is worthy of great consideration.[8] Although the spirit of the constitution is to be respected not less than its letter, yet the spirit is to be collected chiefly from its words.[9] Where words admit of different intendments, that must be selected which is most consonant with the object in view.[10] The argument from inconvenience cannot prevail over plain words or clear reason, but a construction which would necessarily occasion public or private mischief must yield to a construction which will occasion neither.[11] Words are to be taken in their natural and obvious sense, and not in a sense unreasonably restricted or enlarged.[12] Every word must have its due force and appropriate meaning, and no word should be rejected as superfluous or unmeaning;[13] and care should be taken to reconcile words apparently discordant.[14] The same words have not necessarily the same meaning when found in different parts of the instrument, and the peculiar sense in which a word is used is to be determined by the context,[15] unless the meaning is completely ascertained.[16] Adherence to the letter must not be had in opposition to the reason and spirit of the enactment, and to effectuate the object intended it may be proper to deviate from the usual sense of the words.[17] Affirmative words are often in their operation negative of other objects than those affirmed, but they should not be construed negatively, where they have full operation, without such construction.[18]

EXECUTION OF POWERS AND ENFORCEMENT OF RIGHTS. The constitution does not profess to enumerate the means by which the powers it confers may be executed. If the means are appropriate, the necessity for their use is to be determined by congress alone.[19] If the constitution guaranties a right, the national government is clothed with authority to enforce it;[20] and one method may be applicable to one fundamental right, while another may not.[21] So a wide discretion is left to congress to determine what is necessary.[22] In the exercise of its power " to lay and collect taxes, duties, imposts, and ex-

---

[1] Const. U. S. art. 1, § 8, subd. 1.

[2] Id. subd. 18.

[3] Id. subd. 1.

[4] Martin v. Hunter's Lessee, 1 Wheat. 304.

[5] Kunzier v. Kohaus, 5 Hill, 317; Padelford v. Savannah, 14 Ga. 438.

[6] Cohens v. Virginia, 6 Wheat. 264; Marbury v. Madison, 1 Cranch, 138.

[7] Railroad Co. v. Peniston, 18 Wall. 5.

[8] Martin v Hunter's Lessee, 1 Wheat. 304; McCulloch v. Maryland, 4 Wheat. 316; Houston v. Moore, 5 Wheat. 1; Briscoe v Bank, 11 Pet. 257; Cooley v. Port-wardens, 12 How. 299; Adams v. Storey, 1 Paine, 79; Hicks v. Hotchkiss, 7 Johns. Ch. 297; Metropolitan Bank v. Van Dyck, 27 N. Y. 400.

[9] Sturges v. Crowninshield, 4 Wheat. 122.

[10] Aldrich v. Kinney, 4 Conn. 380.

[11] Ex parte Griffin, Chase, 364; S. C. 25 Tex. Supp. 623.

[12] Martin v. Hunter's Lessee, 1 Wheat. 304; Metropolitan Bank v. Van Dyck, 27 N. Y. 400.

[13] Holmes v. Jennison, 14 Pet. 540; Hitchcock v. Aicken, 1 Caines, 460; State v. Scott, 9 Ark. 270.

[14] Curtis v. Gibbs, 2 N. J Law, 377.

[15] Cherokee Nation v. Georgia, 5 Pet. 1; Wheaton v. Peters, 8 Pet 591.

[16] U. S. v. Burr, 2 Wheeler, C. C. 573.

[17] Aldrich v. Kinney, 4 Conn. 380.

[18] Cohens v. Virginia, 6 Wheat. 264; Marbury v. Madison, 1 Cranch, 137.

[19] McCulloch v. Maryland, 4 Wheat. 316; Metropolitan Bank v. Van Dyck, 27 N. Y. 400.

[20] U. S. v. Cruikshank, 92 U. S. 542; 1 Woods, 308; Prigg v. Com. 16 Pet. 539.

[21] U. S. v. Cruikshank, 92 U. S. 542; 1 Woods, 308.

[22] Legal-tender Cases, 12 Wall 534; Low v. Cent. Pac. R. Co. 52 Cal. 63.

cises," congress may, to enforce their payment, authorize the distraint and sale of either real or personal property without " due process of law."[1]

GENERAL POWER OVER COMMERCE AND BUSINESS. Congress has the general power to impose a tax on business,—such as distilling,—and to impose penalties and forfeitures.[2]  So it may impose an excise tax on the circulation of state banks,[3] or pass a law imposing a license duty on those engaged in a business which is a subject of a police regulation by the state,[4] and although the business may be prohibited by the state laws.[5]  The mere imposition of a tax by the United States does not authorize a person to pursue an occupation prohibited by state law; the regulation of such is in the domain of the police power of the state.[6]

WHAT NOT WITHIN THE POWER OF CONGRESS. The words "welfare of the United States," in the grant of power to congress to lay and collect taxes, do not authorize the taxation of means necessary for the exercise of the state government, nor for purposes which are within the exclusive power of the state;[7] so whether a municipality builds a road or loans its credit, it is performing one of the functions of the state, and its revenues are not subject to taxation by the federal government.[8]  Nor can congress interfere with state taxation either as to the amount, assessment, or enforcement of the taxes;[9] nor, without the assent of the state, tax its means or instruments devised by the state for the collection of its own revenue;[10] nor can it tax the judicial proceedings of state courts,[11] nor their process;[12] nor require a revenue stamp upon such process;[13] nor the bonds required by law from persons holding state offices;[14] nor impose an income tax on the salaries of state officers,[15] as state judges,[16] or prothonotaries.[17]  Although it may impose a tax on the salaries of civil officers, yet it cannot tax those over whom it has no constitutional power.[18]

POWERS CONCURRENT. The power of taxation conferred on the general government does not operate as a prohibition on the states; it is a power concurrent in the national and state governments.[19]  Revenue is the life of the state, and congress cannot say when and where and in what manner it must be laid and collected.[20]  The inference is that the individual states would, under the constitution, retain an independent and uncontrollable authority to raise revenue to any extent of which they may stand in need by every kind of taxation except duties on imports and exports, and this reconciles an indefinite power of taxation with an adequate and independent power in the states to provide for their own necessities.[21]  The powers of congress are not exclusive except where the constitution expressly in terms so provides, or where they

---

[1] Springer v. U. S. 102 U. S. 586.

[2] U. S. v. McKinley, 4 Brewst. 246.

[3] Veazie Bank v. Fenno, 8 Wall. 533; Legal-tender Cases, 12 Wall. 543.

[4] U. S. v. Riley, 5 Blatchf. 204.

[5] 5 Wall. 462.

[6] License Tax Cases, 5 Wall. 475; McGuire v. Com. 3 Wall. 387; U. S. v. Riley, 5 Blatchf. 2¼.

[7] Collector v. Day, 11 Wall. 125; U. S. v. Railroad Co. 17 Wall. 322; Sweatt v. Boston, etc , R. Co. 5 N. B. R. 248.

[8] U. S. v. Railroad Co. 17 Wall. 322.

[9] Whiteaker v. Haley, 2 Or. 128.

[10] Gibbons v. Ogden, 9 Wheat. 199.

[11] Sayles v. Davis, 22 Wis. 225; Union Bank v. Hill, 3 Cold. 325.

[12] Smith v. Short, 40 Ala. 385.

[13] Fifield v. Close, 15 Mich. 505; Tucker v. Potter, 35 Conn. 46.

[14] State v. Garton, 32 Ind. 1.

[15] Dobbins v. Erie Co. 16 Pet. 435; Collector v. Day, 11 Wall. 125; Legal-tender Cases, 12 Wall. 457; Freedman v. Sigel, 10 Blatchf. 330.

[16] Com. v. Mann. 5 Watts & S. 403; New Orleans v. Lea, 14 La. Ann. 197; Gilkeson v. The Frederick Justices, 13 Grat. 577; Freedman v. Sigel, 10 Blatchf. 327; Collector v. Day, 11 Wall. 113.

[17] City Council v. Lee, 3 Brev. 226; Cohen v. Com. 6 Pa. St. 111.

[18] Tax on Salaries, 13 Op. Attys. Gen. 161.

[19] McCulloch v. Maryland, 4 Wheat. 316; Nathan v. Louisiana, 8 How. 73; Lane Co. v. Oregon, 7 Wall. 77; Railroad Co. v. Peniston, 18 Wall. 29; People v. Coleman, 4 Cal. 46.

[20] Whiteaker v. Haley, 2 Or. 137; State Treasurer v. Wright, 28 Ill. 512; Dobbins v. Erie Co. 16 Pet. 435.

[21] Whiteaker v. Haley, 2 Or. 128.

are prohibited to the states, or where there is a direct repugnance or incompatibility in their exercise by the states.[1] Congress has not the power to lay and collect *all* taxes, else why in the same sentence almost prohibit the states from laying one kind of an indirect tax? Such a prohibition admits that the right is in the states to levy and collect all other taxes proper for the maintenance of their governments.[2]

LIMITATION ON POWER OF TAXATION. The only limitatation on the power of taxation conferred on congress by the constitution is that "duties, imposts, and excises" shall be "uniform."[3] "Uniform," means the same duties at all ports in the states and territories, and that income taxes and excises shall operate alike, including the District of Columbia.[4] The provisions of the constitution were designed to secure uniformity as between the states, not as between different kinds of property; "to cut off all undue preferences of one state over another in the regulation of subjects affecting the common interests."[5] Where the law is uniform in conformance with the constitution, its validity does not depend on the celerity or uniformity with which it can be executed.[6] A capitation tax may be imposed by congress not only in the states, but in the territories and in the District of Columbia.[7] Such a tax is a direct tax;[8] and direct taxes must be laid by the rule of apportionment.[9] The power of congress is necessarily co-extensive with the territory of the United States, operating on all persons belonging to the body politic.[10]

RESTRICTIONS ON THE POWER OF CONGRESS. The power of congress to interfere with exports is taken away by the provision of the constitution that "no tax or duty shall be laid on articles exported from any state;"[11] but a charge for a stamp on a package of tobacco intended for export, made as a means to prevent fraud, is not a tax on exports;[12] nor is an act regulating commercial intercourse with the insurrectionary states and imposing duties thereon.[13] The first 10 amendments to the federal constitution are restrictions on the power of congress; they do not apply to the states;[14] and so of the

---

[1] Calder v. Bull. 3 Dall. 386; U. S. v. Bevans, 3 Wheat. 339; Sturges v. Crowninshield, 4 Wheat. 193; Peck's Trial, 86; U. S v. Fisher, 2 Cranch, 358; 1 Wash. C. C. 4; Houston v. Moore, 5 Wheat. 49; 3 Serg. & R. 179; Wil son v. Blackbird, etc., Co. 2 Pet. 245; New York v. Miln, 11 Pet. 103; Holmes v. Jennison, 14 Pet. 510; Groves v. Slaughter. 15 Pet 509; Prigg v. Com. 16 Pet. 627; Passenger Cases, 7 How. 555; McVeigh v. U. S. 11 Wall. 259; U. S. v New Bedford Bridge. 1 Wood & M. 432; Com. v. O'Hara, 1 N. B R. (Supp.) 20; Livingston v. Van Ingen, 9 Johns. 568. But see The Chusan, 2 Story, 465; Golden v. Prince, 3 Wash. C C. 313.

[2] Whitcaker v. Haley, 2 Or. 128.

[3] Hylton v. U. S. 3 Dall. 171; Gibbons v. Ogden, 9 Wheat. 199; License Tax Cases, 5 Wall. 462; U. S. v Singer, 15 Wall. 111; Scholey v. Rew, 23 Wall. 318; Atty. Gen. v. Winnebago L. & F. R. P. Co. 11 Wis 35; Veazie Bank v. Fenno, 8 Wall. 533; Sav. & L. Soc. v. Austin, 46 Cal. 477; People v. Reynolds, 10 Ill. 12; People v. Salomon, 51 Ill. 54; Springer v. U. S. 102 U. S. 593.

[4] Loughborough v. Blake, 5 Wheat 317. That the power of congress over taxation in the District of Columbia is unlimited, see, also, Kendall v. U. S. 12 Pet. 524.

[5] State v. Winnebago L. & F. R. P. Co. 11 Wis. 42; Exchange Bank v. Hines, 3 Ohio St. 1. See Western Union Tel. Co. v. Mayer, 28 Ohio St. 521; Waring v. Savannah, 60 Ga. 93; Marsh v. Clark Co. 42 Wis. 502.

[6] U. S. v. Riley, 5 Blatchf. 209.

[7] Loughborough v. Blake, 5 Wheat. 317.

[8] Hylton v. U. S. 3 Dall. 171.

[9] Const U. S. art. 1, § 9, subd. 4; License Tax Cases, 5 Wall. 471.

[10] Providence Bank v. Billings, 4 Pet. 514.

[11] Const. U. S. art. 1, § 9, subd. 5; Hylton v. U. S. 3 Dall. 171; The Williams, Hall's Law J. 255.

[12] Pace v. Burgess, 92 U. S. 372.

[13] Folsom v. U. S. 4 Ct. Cl. 366.

[14] Barron v. Baltimore, 7 Pet. 250; Livingston v. Moore, 7 Pet. 469; Bald. 424; Fox v. Ohio, 5 How. 434; Smith v. Maryland, 18 How. 76; Withers v. Buckley, 20 How. 90; 29 Miss. 21; Legal-tender Cases, 12 Wall. 535; North Mo. R. Co. v. Maguire, 20 Wall. 46; 49 Mo. 490; Edwards v. Elliott, 21 Wall. 557; Twitchell v. Com. 7 Wall. 325; Pervear v. Com. 5 Wall. 479; U. S. v. Cruikshank, 92 U. S. 552; 1 Woods, 308; U. S. v. Rhodes, 1 Abb. (U. S.) 43; Colt v. Eves, 12 Conn. 243; Jackson v. Wood, 2 Cow. 819; Murphy v. People, Id. 815; Barker v. People, 3 Cow. 686; Hill v. State, 53 Ga. 472; Baker v. Wise, 16 Grat. 139; Bryan v. State, 4 Iowa, 349; State v. Barnett, 3 Kan. 250; Com. v. Hitchings. 71 Mass. 482; Com. v. Pomeroy, Id. 486; State v. Schricker,

fifth amendment, which has no reference to the exercise of the powers of state governments.[1]

TREATIES AND ACTS OF CONGRESS AS SUPREME LAW. A treaty is a solemn agreement between nations,[2] and has the force of a law, binding upon the nation in the aggregate, and all its subordinate authorities and judges of every state.[3] When duly ratified, a treaty is the supreme law—the law of the land.[4] It is to be regarded as equivalent to an act of congress, whenever it operates of itself, without the aid of any legislative provision; and where a treaty and an act of congress are in conflict, the latest in date must control.[5] Whether an act of congress shall prevail over a treaty is a question solely of municipal law as distinguished from public law.[6] It is supreme only when made in pursuance of that authority which has been conferred upon the treaty-making department, and in relation to subjects over which it has jurisdiction.[7] Congress has the power to repeal a law contained in a treaty when it relates to subjects placed under the legislative power.[8] When the terms of a stipulation import a contract, a treaty addresses itself to the political and not the judicial department, and congress must execute it before it becomes a rule of court.[9] The constitution does not forbid congress to pass laws impairing the obligation of contracts;[10] but an act of congress passed for the purpose of impairing the obligation of a contract would be void; yet if the primary object of the act was within any of its granted powers, it is valid.[11]

PASSENGER TAX. The provision of the United States constitution investing congress with the power to regulate commerce extends to persons as well as property.[12] So the imposition of a tax on passengers arriving from a foreign port, by a state statute, is unconstitutional and void;[13] and so of an act discriminating as to Chinese immigration.[14] A statute of a state, in so far as it requires payment of 70 cents for each passenger coming into the state, inspected to ascertain if he is afflicted with leprosy, is unconstitutional and void.[15] "Imports" and "inspection laws," within the meaning of the United States constitution, have reference solely to merchandise, and do not apply to

29 Mo. 265; State v. Millain, 3 Nev. 407; Astor v. New York, 37 N. Y. Super. 560; State v. Paul, 5 R. I. 185; James v. Com. 12 Serg. & R. 220; Lincoln v. Smith, 27 Vt. 328; Livingston v. Mayor, etc., 8 Wend. 85; Matt. of Smith, 10 Wend. 449; Lee v. Tillotson, 24 Wend. 337.

1 Kelly v. Pittsburgh, 104 U. S. 79; Withers v. Buckley, 20 How. 84; Davidson v. New Orleans, 96 U. S. 97.

2 Foster v. Neilson, 2 Pet. 314; Worcester v. State, 6 Pet. 515; Taylor v. Morton, 2 Curt. 454.

3 Ware's Adm'rs v. Hylton, 3 Dall. 199; Marbury v. Madison, 1 Cranch, 176; Worcester v. Georgia, 6 Pet. 575; Calder v. Bull, 3 Dall. 386; Owings v. Norwood's Lessee, 5 Cranch, 348; Satterlee v. Matthewson, 2 Pet. 413; Ex parte Garland, 4 Wall. 399; Cummings v. Missouri, 4 Wall. 329; People v. Gerke, 4 Amer. Law R. 604; 6 Op. Attys. Gen. 291; Fellows v. Denniston, 23 N. Y. 420; The British Prisoners, 1 Wood. & M. 72; U. S. v. New Bedford Bridge, Id. 449; Society v. New Haven, 8 Wheat. 464.

4 Pollard's Heirs v. Kibbe, 14 Pet. 414; Rhode Island v. Massachusetts, 12 Pet. 657.

5 Foster v. Neilson, 2 Pet. 314; U. S. v. Arredondo, 6 Pet. 691; U. S. v. Percheman, 7 Pet. 51; Gordon's Lessee v. Kerr, 1 Wash. C. C. 322.

6 Taylor v. Morton, 2 Curt. 454.

7 People v. Nagles, 1 Cal. 231.

8 Talbot v. Seeman, 1 Cranch. 1; Ware's Adm'rs v. Hylton, 3 Dall. 199; U. S. v. Tobacco Fact. 1 Dill. 266; Webster v. Reid, 11 How. 437; Morris, 467; Ropes v. Clinch. 8 Blatchf. 304; Taylor v. Morton, 2 Curt. 454; Scott v. Sandford, 19 How. 629; Gray v. Clinton Bridge, 10 Wall. 454; Woolw. 150; Cherokee Tobacco, 11 Wall. 621; Bucker v. Street, 7 N. B. R. 257.

9 Foster v. Neilson, 2 Pet. 314; U. S. v. Ferreira, 13 How. 40; Turner v. Missionary Union, 5 McLean, 344; Taylor v. Morton, 2 Curt. 454; In re Metzger, 1 Parker, Crim. Cas. 108.

10 Satterlee v. Matthewson, 2 Pet. 380; Legal-tender Cases, 12 Wall. 457; Evans v. Eaton, 3 Wheat. 454; S. C. Pet. C. C. 322.

11 Evans v. Eaton, 3 Wheat. 454; 7 Wheat. 356; Legal-tender Cases, 12 Wall. 457; Bloomer v. Stolley, 5 McLean, 158; Hague v. Powers. 39 Barb. 427; George v. Concord, 45 N. H. 434; Metropolitan Bank v. Van Dyck, 27 N. Y. 400; Shollenberger v. Brinton, 52 Pa. St. 9.

12 Lin Sing v. Washburn, 20 Cal. 534.

13 Passenger Cases, 7 How. 349; People v. Raymond, 34 Cal. 492; State v. The Steam-ship Constitution, 42 Cal. 589.

14 Lin Sing v. Washburn, 20 Cal. 534.

15 People v. Pacific M. S. Co. 8 Sawy. 640; S. C. 16 Fed. Rep. 344.

persons.[1] So a state statute providing that a tax of one dollar be levied upon every alien passenger coming by vessel from a foreign port, out of which tax the commissioners of immigration are to expend such sums as may be necessary for the execution of the state inspection laws, the balance to be paid into the United States treasury, is a regulation of commerce and unconstitutional.[2] The result of the *Passenger Cases* is that a tax demanded of the master or owner of a vessel for every passenger is a regulation of commerce, within the exclusive power of congress, and, if imposed by a state statute, it is unconstitutional and void.[3]—[ED.

[1] People v. Compagnie Generale Transatlantique, 2 Sup. Ct. Rep. 87; S. C. 10 Fed. Rep. 357; Henderson v. New York, 92 U. S. 259.

[2] People v. Compagnie Generale Transatlantique, 2 Sup. Ct. Rep. 87; S. C. 10 Fed. Rep. 357.
[3] Henderson v. New York, 92 U. S. 259, and cases criticised.